UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
EFFAT S. EMAMIAN,

                Plaintiff,

                                                    07 CV 3919 (DAB)

     -against-

ROCKEFELLER UNIVERSITY,

                Defendant.
------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SEVENTH AND EIGHT CLAIMS OF THE AMENDED COMPLAINT

LIDDLE & ROBINSON, L.L.P.
800 THIRD AVENUE
NEW YORK, N.Y. 10022
(212) 687-8500

# TABLE OF AUTHORITIES

**Cases**  Page(s)

Albert v. Loksen, 239 F.3d 256 (2d Cir. 2001) ..................................................................... 5

Armstrong v. Simon & Schuster, Inc., 85 N.Y.2d 373, 649 N.E.2d 825 (N.Y. 1995.) ............... 3, 4

Bernheim v. Litt, 79 F.3d 318 (2d Cir. 1996) ........................................................................ 3

Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163 (2d Cir. 2000) ..................................... 3

Dibella v. Hopkins, 2002 WL 31427362 (S.D.N.Y.) ............................................................. 4

Gagliardi v. Village of Pawling, 18 F.3d 188 (2d Cir. 1994) ................................................. 2

Hartzog v. Reebok Intern. Ltd., 77 F. Supp.2d 478 (S.D.N.Y. 1999) ..................................... 2

Jackson National Life Ins. Co. v. Merrill Lynch & Co., 32 F.3d 697 (2d Cir. 1994) .............. 2

Kasada, Inc. v. Access Capital, Inc, 2004 WL 2903776 (S.D.N.Y. Dec 14, 2004) ................. 3

Liker v. Weider, 41 A.D. 438, 838 N.Y.S.2d 140 (2d Dep't 2007) ........................................ 6

McNulty v. New York Dept. of Finance, 941 F. Supp. 452 (S.D.N.Y. 1996) ......................... 2

November v. Time Inc., 13 N.Y.2d 175, 244 N.Y.S.2d 309, 194 N.E.2d 126 (1963) ............. 4

Pasqualini v. Mortgageit, Inc. 498 F.Supp.2d 659 (S.D.N.Y. 2007) ..................................... 3

Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119 (2d Cir. 1991) ....................................... 2

Roberti v. Schroder Investment Management North America, 2006 WL 647718
   (S.D.N.Y. March 14, 2006) ................................................................................................ 4

Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683 (1974) ....................................................... 3

**Statutes**

42 U.S.C. § 1983 .................................................................................................................... 1

**Rules**

Fed. R. Civ. P. 8(a) ............................................................................................... 2
Fed. R. Civ. P. 8(a)(2) ............................................................................................ 1
Fed. R. Civ. P. 12(b)(6) ...................................................................................... 1, 2

**Miscellaneous Authorities**

The New York State Human Rights Law ............................................................. 1
The New York City Human Rights Law .............................................................. 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
EFFAT S. EMAMIAN,  :
                                                                             :    07 CV 3919 (DAB)
                Plaintiff,  :

-against-  :

ROCKEFELLER UNIVERSITY,  :

                Defendant.  :
----------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS THE SEVENTH
AND EIGHT CLAIMS OF THE AMENDED COMPLAINT**

Plaintiff, Effat S. Emamian (hereinafter "Emamian"), respectfully submits this Memorandum in Opposition to Defendant's Motion to Dismiss the Seventh and Eight Claims of the Amended Complaint filed pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, the Court should deny Defendant's motion.

## PRELIMINARY STATEMENT

Emamian has asserted claims for Defamation by Implication and Tortious Interference with Prospective Economic Advantage.[1] Under Rule 8(a)(2) of the Federal Rules of Civil Procedure (which permits liberal and simplified pleading), Plaintiff has asserted sufficient facts giving rise to these claims. Plaintiff has stated facts that allege that Defendant published false and defamatory statements to third parties, and that Plaintiff had existing and prospective business

---

[1] Plaintiff also asserts causes of action under Title VII, the New York State Human Rights Law, the New York City Human Rights Law, and 42 U.S.C. § 1983. These causes of action are not subject to Defendant's Motion to Dismiss and are therefore not discussed in Plaintiff's Opposition.

1

relations with third parties, which Defendant had reason to know about and with which Defendant interfered.

## FACTS

The relevant facts are set forth in Emamian's Complaint, submitted with Defendant's motion papers as Exhibit 1 to the Affidavit of Bettina B. Plevan.

## ARGUMENT

I.   **The Standard of Review.**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must assume the truth of the plaintiff's allegations, and draw all reasonable inferences in favor of the plaintiff. See Jackson National Life Ins. Co. v. Merrill Lynch & Co., 32 F.3d 697, 699-700 (2d Cir. 1994). A complaint thus may be properly dismissed "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." McNulty v. New York Dept. of Finance, 941 F. Supp. 452, 454 (S.D.N.Y. 1996) (citing Gagliardi v. Village of Pawling, 18 F.3d 188, 191 (2d Cir. 1994)). The plaintiff "need provide only a short and plain statement of the claim showing that the pleader is entitled to relief." Hartzog v. Reebok Intern. Ltd., 77 F. Supp.2d 478, 479 (S.D.N.Y. 1999) (citing FRCP 8(a)). "Indeed, the pleading of evidence should be avoided." Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 124 (2d Cir. 1991); see also Hartzog, supra ("An evidentiary standard is not a proper measure of whether a

complaint fails to state a claim"). The issue for the Court thus is not whether a plaintiff will ultimately prevail on her claims, but whether she is entitled to offer evidence in support of the allegations made. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683 (1974); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).

## II.     Plaintiff Adequately Pled Her Claim for Defamation By Implication

In a Defamation action under the Federal Rules of Civil Procedure, the Plaintiff has satisfied the pleading requirements if she states facts that "generally allege the elements of her defamation claims." Pasqualini v. Mortgageit, Inc. 498 F. Supp. 2d 659, 673 (S.D.N.Y. 2007) (holding that a defamation claim does not need to be pled with particularity). "[T]he pleading need not allege the specific defamatory words or the time place, and speaker of each defamatory statement." Id. Under New York law, the elements of a defamation cause of action are: (i) a defamatory statement of fact concerning the plaintiff, (ii) publication to a third party by the defendant, (iii) falsity of the defamatory statement, (iv) some degree of fault, and (v) special damages or per se actionability (defamatory on its face). Kasada, Inc. v. Access Capital, Inc, 2004 WL 2903776 at *17 (S.D.N.Y.) (internal citations omitted). "As a general rule, a statement is defamatory per se if it 'tends to disparage a person in the way of [her] office, profession or trade.'" Id. (quoting Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 179 (2d Cir. 2000)). "Defamation by implication is premise not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements." Armstrong v. Simon & Schuster, 85 N.Y.2d 373, 380-1, 649 N.E.2d 825 (N.Y. 1995). "The words are to be construed

3

not with the close precision expected from lawyers and judges but as they would be read and understood by the public to which they are addressed . . . . " <u>Dibella v. Hopkins</u>, 2002 WL 31427362 at *2 (S.D.N.Y.) (quoting <u>November v. Time Inc.</u>, 13 N.Y.2d 175, 244 N.Y.S.2d 309, 311-12, 194 N.E.2d 126 (1963)).

In her complaint Plaintiff alleged: (1) that Dr. Greengard discussed her findings with experts and that "they did not find her discoveries to be of importance;" (2) that Dr. Greengard abruptly stopped her presentation to her colleagues while making comments that had defamatory implications; (3) a pattern of behavior by Dr. Greengard that constitutes defamatory conduct, including refusing to participate in the publication of her paper despite being her supervisor; and (4) comments made by Marc Flajolet that Dr. Emamian was a "camel driver." Plaintiff also alleges that due to these defamatory statements and actions, collaborators abruptly ceased their contact with her, and she has been unable to secure a position elsewhere in academia.

Defendant argues that in order to state a claim of defamation by implication, "plaintiff must identify a statement made by Defendant that omitted some material fact or otherwise led the listener to draw an incorrect impression or inference." Motion p. 3. While Defendant accurately states the doctrine of defamation by implication, neither "the New York State Court of Appeals and the Second Circuit . . . has yet articulated a standard for evaluating such a claim in the context of a motion to dismiss." <u>Roberti v. Schroder Investment Management North America</u>, 2006 WL 647718 at *9 (S.D.N.Y.) (<i>See</i> <u>Armstrong v. Simon & Schuster, Inc.</u>,

4

649 N.E.2d 825, 829 (N.Y. 1995.)). It is for the court -- construing "all allegations of the complaint in the light most favorable to the Plaintiff" -- to determine whether Plaintiff has alleged sufficient facts for a jury to find that Defendant defamed Plaintiff.

Defendant argues that Plaintiff has not provided sufficient factual detail to meet the pleading requirements. On the contrary, Plaintiff clearly stated that "Dr. Greengard informed her that he had discussed her findings with "experts" and that "they did not find her discovery to be of importance." Complaint ¶ 33. Dr. Greengard himself informed Claimant that he discussed Dr. Emamian and her research with other scientists in an unfavorable light. These discussions occurred after he had told her that he didn't like her, didn't want her to stay at Rockefeller University and wanted her to find another job. Complaint ¶ 32. Dr. Greengard's admitted multiple statements to other scientists were defamatory in nature and had an immediate negative effect on Dr. Emamian's career including: (1) the immediate reaction of the scientific community, including prior collaborators refusing to respond to Dr. Emamian's emails; (2) Rockefeller University's decision not to approve Dr. Emamian's application for tenure; and (3) Dr. Emamian's inability to find a job despite her excellent credentials.

Plaintiff also alleged that Dr. Greengard berated her in front of her peers and abruptly stopped a presentation that she was giving to her colleagues. Complaint ¶ 31. New York recognizes that publication of defamatory conduct applies to statements made by one employee to another. Albert v. Loksen, 239 F.3d 256, 269 (2d Cir. 2001) (holding that assertions made by a supervisor, if proven, would tend to injure a physicist in his profession and would be

5

actionable per se).[2] According to the rules of simplified pleading, Plaintiff put Rockefeller on notice regarding the statements, when they occurred and during what event. Although the statements may be "true" in a scientific sense, Dr. Greengard's statements in the context of the presentation, his abrupt stopping of her presentation and the derogatory manner in which he demeaned her research constituted defamatory conduct which implied that her research and methods were grossly inferior.

Plaintiff additionally alleged other instances of defamatory conduct. New York allows defamation claims where a Defendant has engaged in a pattern of defamatory conduct against the Plaintiff. Liker v. Weider, 41 A.D. 438, 838 N.Y.S.2d 140, 141 (2d Dep't 2007) ("The Plaintiff produced several witnesses whose credible testimony established that the defendant engaged in a pattern of defamatory conduct against the Plaintiff . . . ."). In addition to the above-mentioned statement, Plaintiff alleged that Dr. Greengard excluded her from important tasks, stopped her from following through on potentially career-changing research with no explanation and refused to be involved with the publication of her paper, even though the

---

[2] Plaintiff, to the best of her ability, recollects that during this meeting Dr. Greengard stated: "About the effect of haloperidol on phosphorylation level of AKT, why do you see such a robust effect just after two minutes treatment? Why you didn't try dopamine agonists/antagonists?" Dr. Emamian explained that she tried to do that but another scientist's results for those compounds were not consistently showing the same changes. Dr. Emamian also stated that she would work more on those experiments and that the goal for this experiment was the check the effect of haloperidol on AKT. Dr. Greengard then stated: "It is because you don't know how to do this experiments and Akinori knows this. Why you didn't contact Akinori?" Dr. Greengard also stated that "haloperidol could do this through blocking D2 receptors." Dr. Emamian agreed and said, of course that was what everyone would think. Dr. Greengard then yelled, "Do you know if haloperido affects AKT itself?" Claimant explained that it was a possibility because high micromolar doses of haloperidol can affect the activity of AKT in vitro. The statements on their face do not appear to be defamatory, because they are largely true and scientific, but the manner of their communication constituted defamation due to their serious implications concerning Dr. Emamian's entitlement to present the material and her research ability.

research was conducted in his laboratory and presumably under his supervision (Complaint ¶¶ 18, 20, 23, 25, and 34). In academia, when a superior such as Dr. Greengard behaves in such a manner towards a subordinate, the conduct in itself has a seriously chilling effect on industry peers and significant negative implications for a career, due to the impression and message it sends to the scientific community.

Finally, Plaintiff alleged that Marc Flajolet sent an email to the lab that stated that Plaintiff was a "camel driver." Complaint ¶ 30. This statement, in addition to being racist, was a comment on Plaintiff's abilities, with the implications that she was uneducated and unfit for her job.

### III. Plaintiff Adequately Pled Her Claim for Tortious Interference with Prospective Economic Advantage.

Under New York law the Plaintiff must allege four elements: (1) [she] had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, used dishonest, unfair or improper means; and (4) the defendant's interference caused injury to the relationship. Pasqualini 498 F. Supp. 2d at 669-70. Plaintiff alleged that she: (1) had ongoing collaborations with other scientists in her field, was on the verge of publishing a paper, and was seeking a new job; (2) that the defendant knew about these collaborations, her paper, and her job search (because Rockefeller was not renewing her appointment and Dr. Greengard informed her he wanted her to find another job); (3) that Defendant acted out of malice, used dishonest or

7

improper means and that (4) all of the collaborators who previously agreed to work with her suddenly and abruptly stopped e-mailing her and she has been unable to secure another job.

Defendant states that Plaintiff has not alleged that she had any business relationships with an identified third party, "much less that Defendant was aware of them." Motion p. 4. Plaintiff is a scientist, who, like all other scientists such as Dr. Greengard, collaborates routinely with scientists outside of her laboratory and university. For the purposes of Plaintiff's career, these outside collaborations are business relationships. Plaintiff alleged that "several scientists who previously enthusiastically agreed to work with her on several projects no longer respond to her emails" Complaint ¶ 53. Rockefeller University had full knowledge that Dr. Emamian was pursuing collaborations and alternative employment since, on May 10, 2005, over two years ago, Dr. Greengard told Dr. Emamian that he didn't like her and that she should find another job (Complaint ¶ 32) and on January 10, 2007 Rockefeller informed Dr. Emamian her appointment would not be renewed (Complaint ¶ 51). Plaintiff is entitled to present evidence to this effect to prove that her collaborations were in fact interfered with by Rockefeller University and that Rockefeller University knew about them.

## CONCLUSION

For the foregoing reasons, Plaintiff Effat S. Emamian respectfully requests that the Court deny Defendant's Motion to Dismiss. In the alternative, should the Court conclude that Plaintiff inadequately pled the Seventh and Eight Claims of the Amended Complaint, Plaintiff requests leave of the Court to replead and/or amend these claims.

Dated: New York, New York
October 5, 2007

Respectfully submitted,

LIDDLE & ROBINSON, L.L.P.

By: _____
Jeffrey L. Liddle
James A. Batson
Attorneys for Plaintiff
800 Third Avenue
New York, New York 10022
(212) 687-8500

9