UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------X
Effat S. Emamian,

                    Plaintiff,


          v.                                    07 Civ. 3919 (DAB)
                                                OPINION & ORDER

Rockefeller University,


                    Defendant.
-------------------------------------------X
DEBORAH A. BATTS, United States District Judge.

        Defendant has moved for Judgment as a Matter of Law

pursuant to Rule 50(a) on Plaintiff's claims for negligence,

promissory estoppel, intentional discrimination based on race,

religion, national origin and gender, and retaliation. For the

reasons stated below, Defendant's Motion for Judgment as a

Matter of Law is GRANTED with regard to Plaintiff's negligence

claim, but DENIED on Plaintiff's claims for promissory estoppel,

intentional discrimination, and retaliation.


I.    Rule 50(a) JMOL Standard

    Rule 50(a) states:

            (1) *In General.* If a party has been fully heard on
            an issue during a jury trial and the court finds that
            a reasonable jury would not have a legally sufficient
            evidentiary basis to find for the party on that
            issue, the court may:
                (A) resolve the issue against the party;
                and
                (B) grant a motion for judgment as a
                matter of law against the party on a
                claim or defense that, under the
                controlling law, can be maintained or

> defeated only with a favorable finding on
> that issue.
>
> (2) *Motion.* A motion for judgment as a matter of law
> may be made at any time before the case is submitted
> to the jury. The motion must specify the judgment
> sought and the law and facts that entitle the movant
> to the judgment.

Fed. R. Civ. P. 50.

In considering a motion for judgment as a matter of law,
the district court "must draw all reasonable inferences in favor
of the nonmoving party, and it may not make credibility
determinations or weigh the evidence. . . . [A]lthough the court
should review the record as a whole, it must disregard all
evidence favorable to the moving party that the jury is not
required to believe." Reeves v. Sanderson Plumbing Prods., 530
U.S. 133, 150-51 (2000).

"Thus, a court may grant a motion for judgment as a matter
of law only if it can conclude that, with credibility
assessments made against the moving party and all inferences
drawn against the moving party, a reasonable juror would have
been compelled to accept the view of the moving party." Zellner
v. Summerlin, 494 F.3d 344, 370-71 (2d Cir. 2007) (internal
quotation marks omitted).

The "standard for granting summary judgment mirrors the
standard for judgment as a matter of law, such that the inquiry
under each is the same." Reeves, 530 U.S. at 150 (internal
quotation marks omitted).

2

II.  Analysis

A. Negligence

Under New York law, to "establish a prima facie case of
negligence, a plaintiff must demonstrate (1) a duty owed by the
defendant to the plaintiff, (2) a breach thereof, and (3) injury
proximately resulting therefrom." Solomon v. City of New York,
66 N.Y.2d 1026, 1027 (N.Y. 1985).

Plaintiff argues that Defendant acted negligently by
promising to send Dr. Emamian her mouse lines, and then failing
to do so. Defendant argues that it owed no duty to send Dr.
Emamian the mouse lines because the University owned the mouse
lines in question in the first place. Plaintiff does not dispute
the fact that the University owned the mouse lines (at least
originally), but argues that Mr. Winborn's promise to send Dr.
Emamian's mouse lines to her created a duty, which was then
breached by the University's failure to do so.

Yet Plaintiff's position confuses a cause of action that
lies in tort (negligence) with one that lies in contract
(promissory estoppel).

New York courts have long held that a failure to act on a
contract or promise cannot give rise to a dereliction of duty in
a negligence action: in other words, "nonfeasance" may be the
basis for a contract claim, but only "misfeasance" can be the
basis for a negligence claim arising out of contract. "[I]n the

3

absence of at least an attempt to perform the contract, there
can be no violation of the legal duty. . . . The failure to
perform constitutes nonfeasance which is no more than a breach
of contract actionable only by one in privity of contract."
World Trade Knitting Mills, Inc. v. Lido Knitting Mills, Inc.,
154 A.D.2d 99, 107 (N.Y. App. Div. 2d Dep't 1990).[1]

The First Department Appellate Division summarized this
distinction in Rosenbaum:

> Negligent conduct becomes actionable only when it
> violates some specific duty owing to the person
> complaining. The failure to perform a contract
> obligation is never a tort unless it is also a violation
> of a legal duty. Where a person contracts to do certain

---

[1] See also World Trade Knitting Mills, 154 A.D.2d at 105
("Honeywell's argument with respect to any potential tort cause
of action is founded on its assertion that its alleged conduct
constituted only 'nonfeasance' rather than 'misfeasance'. Since,
Honeywell contends, its duty of care was imposed by contract,
rather than by law, it should be held immune from tort liability
to the plaintiffs pursuant to the general rule that 'failure to
perform [a contract] at all is a nonfeasance which constitutes
no more than a breach of contract actionable only by one in
privity of contract.' . . . There is more than ample support for
Honeywell's position in the case law."); Eaves Brooks Costume
Co. v. Y.B.H. Realty Corp., 149 A.D.2d 652, 653 (N.Y. App. Div.
2d Dep't 1989) ("The appellants' alleged failure to properly and
timely inspect the sprinkler and alarm systems were examples of
nonfeasance, not of misfeasance. A plaintiff cannot recover in
the absence of privity where an affirmative act of negligence
has not been committed."); cf. Northbrook Prop. & Cas. Ins. Co.
v. D.J.L. Warehouse Corp., 146 A.D.2d 574, 574-75 (N.Y. App.
Div. 2d Dep't 1989) ("Furthermore, there was no duty owing from
Holmes to AP. Holmes's purported dereliction was in the nature
of nonfeasance, i.e., the failure to repair the alarm system
rather than misfeasance, i.e., negligent performance. Hence, it
incurred no liability toward AP, an unintended and incidental
beneficiary of contract.").

> work he is charged with the common-law duty of exercising
> reasonable care and skill in the performance of the work
> required to be done by the contract. It is the breach of
> the duty imposed by law and not of the contract
> obligation which constitutes the tort. While such duty
> may arise out of contract, it is a separate and distinct
> undertaking so that a breach of one will not necessarily
> imply a breach of the other, although the same conduct
> may at times constitute a tort as well as a breach of
> contract. <u>In the absence of at least an attempt to
> perform the contract there can be no violation of the
> legal duty</u>.

<u>Rosenbaum v. Branster Realty Corp</u>., 276 A.D. 167, 168 (N.Y. App. Div. 1st Dep't 1949) (internal citations omitted) (emphasis added).

The University did not undertake an affirmative act after allegedly agreeing to send Dr. Emamaian's mouse lines to her. Plaintiff has adduced <u>no</u> evidence of an affirmative act, such as negligently mishandling the lines after agreeing to send them, or sending them to the wrong person. Plaintiff has only alleged that the University failed to undertake sending them to her altogether (nonfeasance), which cannot be the basis for a tort claim. "If the only interest at stake is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort." <u>Hargrave v. Oki Nursery Inc.</u>, 636 F.2d 897, 899 (2d Cir. 1980).

Accordingly, Plaintiff's negligence claim must fail as a matter of law.

## B. Promissory Estoppel

Plaintiff's promissory estoppel claim is another story. "Duty" (and ownership) is not an element in promissory estoppel.

Promissory estoppel under New York law "requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000).

Plaintiff has adduced some evidence that could justify a claim for promissory estoppel: Mr. Winborn's promise to preserve Dr. Emamian's mouse lines (see Plaintiff's Exhibit 189 ("We will cryopreserve the lines for which you have requested preservation."); Dr. Emamian's reasonable reliance on that promise (based on the fact that she had previously obtained two other mouse lines from the University), and Dr. Emamian's alleged resulting injury, could constitute the elements of promissory estoppel. (Though the Court does note the paucity of specific evidence Plaintiff has put forward regarding injury and damages). Drawing all reasonable inferences in favor of the Plaintiff, the Court finds, after a review of the record, that a reasonable jury could have a legally sufficient evidentiary basis to find for the Plaintiff on this claim.

Accordingly, Plaintiff's claim for promissory estoppel remains, whereas her claim for negligence is dismissed as a matter of law.

## C. Intentional Discrimination

According to Mihalik v. Credit Agricole Cheuvreux North America, Inc., 715 F.3d 102 (2d Cir. 2013), and Williams v. New York City Housing Authority, 61 A.D.3d 62 (N.Y. App. Div. 1st Dep't 2009), to "establish a . . . discrimination claim under the NYCHRL, the plaintiff need only demonstrate 'by a preponderance of the evidence that she has been treated less well than other employees because of her gender,'" race, religion, or national origin. Mihalik, 715 F.3d at 110 (quoting Williams, 61 A.D.3d at 78). "The challenged conduct need not even be 'tangible' (like hiring or firing)." Id. (quoting Williams, 61 A.D.3d at 79).

As counsel conceded in his opening statement, "candidly, some of the claims are stronger than others." (Tr. of Jan. 22, 2018 at 30:20-21).

Nevertheless, the Court acknowledges that separate claims for race, religion or national origin "may substantially overlap." Village of Freeport v. Barrella, 814 F.3d 594, 607 (2d Cir. 2016) (quoting Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003)); see also Deravin, 335 F.3d at 202 n.5.

The Court also acknowledges that "Middle Eastern" has been recognized as a "race" for the purposes of racial discrimination actionable under Title VII and 42 U.S.C. § 1981. The Supreme Court clarified this point in Saint Francis College v. Al-Khazraji, 481 U.S. 604, 609–14 (1987).[2]

> With respect to the sufficiency of the evidence,
>
> > [i]t is well-settled that an inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to: "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge."

Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009) (quoting Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994)).

Based on a review of the record, and without making "credibility determinations" on the weight of the evidence itself, Reeves, 530 U.S. at 151, the Court finds it possible for

---

[2] See Al-Khazraji, 481 U.S. at 613 ("Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory. . . . If respondent on remand can prove that he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under § 1981.").

a reasonable jury to find for Plaintiff on her intentional discrimination claims on the basis of gender, race, religion or national origin.

The Court will instruct the jury, however, that they must be unanimous on which basis, if any, they find the Plaintiff has proved by a preponderance of the evidence the discrimination.

### D. Retaliation

Mihalik, Williams and Albunio v. City of New York, 16 N.Y.3d 472 (N.Y. 2011), instruct us that to "prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Mihalik, 715 F.3d at 112 (internal citations omitted); see also Albunio, 16 N.Y.3d at 479; Williams, 61 A.D.3d at 70-71.

Defendant argues that pursuant to Slattery v. Swiss Reinsurance America, 248 F.3d 87 (2d Cir. 2001), Plaintiff's retaliation claims should be dismissed because where "timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity an inference of retaliation does not arise." Id. at 95. Defendant contends that because Dr. Greengard

first made his decision not to renew Dr. Emamian's appointment in May 2005, months before she had ever complained of discrimination, she cannot claim that any actions undertaken by the University after that date can be the basis for her retaliation claim. (Defendant's letter of February 20, 2018 at 5-7.)

Plaintiff counters that Dr. Emamian continued to work at Rockefeller after May 2005 (through the end of her term in 2007), and that the University undertook a series of "retaliatory" acts after she first complained of discrimination in August 2005. Plaintiff alleges that Dr. Emamian did not receive letters of support from Doctor Young that identify him as a "mentor" or her actual head of lab, that her application for a faculty position in 2005 was rejected as a result of filing her complaint, and the University still permitted Dr. Greengard to make the decision not to renew her appointment. (Plaintiff's letter of February 20, 2018 at 11-12.)

The Court has grave concerns that the alleged retaliatory actions Plaintiff has identified come anywhere close to establishing that "a causal connection exists between the protected activity and the adverse employment action." Richardson v. Comm'n on Human Rights & Opportunities, 532 F.3d 114, 123 (2d Cir. 2008) (quoting Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998)).

Nevertheless, Slattery would be dispositive if there were no question as to when Plaintiff was fired. Defendant argues that she was fired in May 2005 when Dr. Greengard told her to leave his lab and find another position. Plaintiff argues that she was not fired in May 2005 because she continued to work in that lab until July 2007.

Thus, for Slattery to be dispositive, the jury will have to determine the factual question of when she was fired. Defendant's Rule 50 Motion to dismiss Plaintiff's retaliation claims is denied.

III. Conclusion

For the reasons stated herein, Defendant's Motion for Judgment as a Matter of Law under Rule 50(a) is GRANTED for Plaintiff's Negligence claim, but DENIED for Plaintiff's claims for promissory estoppel, intentional discrimination, and retaliation.

SO ORDERED.

Dated:     New York, New York
           February 21, 2018


                          _Deborah A. Batts_
                          Deborah A. Batts
                          United States District Judge