**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ X

EFFAT S. EMAMIAN,

                      Plaintiff,

   -against-

                               No. 07-CV0319 (PGG) (SDA)

ROCKEFELLER UNIVERSITY,

                     Defendant.

------------------------------------------------------------------ X

**PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION ON PLAINTIFF'S SECOND MOTION FOR PRE- AND POST-JUDGMENT INTEREST & ATTORNEYS' FEES AND COSTS**

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400

*Attorneys for Plaintiff Effat Emamian*

i

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STANDARD OF REVIEW .................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

    I. As the Rule 68 Offer of Judgment Was Untimely Served, It Cannot Limit Plaintiff's
      Recovery.................................................................................................................... 2

    II. Plaintiff Is Entitled to the Full Amount of Pre- and Post- Judgment Interest. ................. 4

      A. Plaintiff Is Entitled to Pre- and Post- Judgment Interest................................................ 4

      B. Plaintiff Is Entitled to Pre-judgment Interest on the Verdict, Which Includes the
         Back Pay Award Plus the Pre-Judgment Interest on That Amount, Pre-judgment
         Interest from the Verdict to the Judgment on the Award of Emotional Distress
         Damages, and on Plaintiff's Accumulated Attorney's Fees and Costs at That
         Point ......................................................................................................................... 10

      C. Plaintiff is Entitled to Post-Judgment Interest from the Date of Judgment until
         Defendant Fulfills Its Obligation to Pay ................................................................... 12

    II. Hourly Rates in Attorneys' Fee Awards Must Match Current Rates that Reflect
      Attorneys' Skill and Experience............................................................................... 13

      A. Liddle & Robinson............................................................................................... 14

      B. Alterman & Boop and Michael Dowd ......................................................................... 15

      C. Beldock Levine & Hoffman and Joshua Moskovitz ............................................. 16

    III. The Lodestar Is A Reasonable Fee, And A Percentage-Based Reduction Fails to
       Compensate for Reasonable Hours ......................................................................... 18

      A. Liddle & Robinson............................................................................................... 19

      B. Alterman & Boop and Michael Dowd ......................................................................... 20

      C. Beldock Levine & Hoffman and Joshua Moskovitz ................................................. 22

    IV. Plaintiff Should Fully Recover for Her Reasonable Out-of-Pocket Costs ................... 24

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*6D Global Tech., Inc. v. Lu*, 2016 WL 1756920 (S.D.N.Y. May 3, 2016)..................................... 1

*A.R. ex rel. R.V. v. New York City Dep't of Educ.,* 407 F.3d 65 (2d Cir. 2005)........................... 22

*Abdell v. City of N.Y.*, No. 05-CV-8453, 2015 U.S. Dist. LEXIS 25510 (S.D.N.Y. Mar. 2, 2015) .................................................................................................................................... 18, 23

*Agence Fr. Presse v. Morel*, 645 F.App'x 86 (2d Cir. 2016)......................................................... 9

*Aiello v. Town of Brookhaven*, No. 94-CV-2622, 2005 U.S. Dist. LEXIS 11462 (E.D.N.Y. June 13, 2005) ................................................................................................................................ 20

*Albunio v. City of N.Y.*, 947 N.E.2d 135 (NY Ct. App. 2011) ...................................................... 13

*Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008) .................... 23

*Cappiello v. ICD Publications, Inc.*, 720 F.3d 109 (2d Cir. 2013)................................................ 13

*Casaccia v. City of Rochester*, No. 17-CV-6323, 2021 U.S. Dist. LEXIS 175727 (W.D.N.Y. Sep. 15, 2021) .............................................................................................................................. 18

*Floyd et al. v. The City of New York, et al*., No. 08-CV-01034 (S.D.N.Y.) (SAS) ...................... 16

*Greenburger v. Roundtree*, 2020 U.S. Dist. LEXIS 147673 (S.D.N.Y. Aug. 16, 2020).............. 17

*Heng Chan v. Sung Yue Tung Corp*., No. 03-CV-06048 (GEL), 2007 WL 1373118 (S.D.N.Y. May 8, 2007............................................................................................................................... 15

*Homeaway.com, Inc. v. City of N.Y.*, 523 F. Supp. 3d 573 (S.D.N.Y. 2021) ............................... 18

*In re Frigitemp Corp.*, 781 F.2d 324 (2d Cir. 1986)................................................................. 8, 9

*Jones v. City of N.Y.*, No. 16-CV-8080, 2021 U.S. Dist. LEXIS 159888 (S.D.N.Y. Aug. 24, 2021) .................................................................................................................................... 18

*Koch v. Greenberg*, 14 F. Supp. 3d 247 (S.D.N.Y. 2014), *aff'd*, 626 F. App'x 335 (2d Cir. 2015) .................................................................................................................................... 11

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998)................................................ 14, 18

*Lewis v. Am. Sugar Ref., Inc.*, No. 14-CV-02302, 2019 U.S. Dist. LEXIS 18058, 2019 WL 116420 (S.D.N.Y. Jan. 2, 2019)................................................................................................ 16

*Lochren v. Cty. of Suffolk*, 344 F. App'x 706 (2d Cir. 2009) ....................................................... 14

*Magnuson v. Video Yesteryear*, 85 F.3d 1424 (9th Cir. 1996) ........................................................ 3

*Margel v. E.G.L. Gem Lab Ltd.*, 2009 U.S. Dist. LEXIS 9357 (S.D.N.Y. Feb. 6, 2009)............. 19

*McConnell v. ABC-Amega*, Inc., 338 F. App'x 24 (2d Cir. 2009).................................................. 1

*McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91 (2d Cir. 2006)......................................................................................................................... 20

*Millea v. Metro-N. R. Co.*, 658 F.3d 154 (2d Cir. 2011) ............................................................... 2

*Missouri v. Jenkins*, 491 U.S. 274 (1989)................................................................................... 14

*Mugavero v. Arms Acres, Inc.*, 2010 U.S. Dist. LEXIS 11210 (S.D.N.Y. Feb. 9, 2010)............. 14

*Mugavero v. Arms Acres, Inc.*, No. 03 Civ. 05724 (PGG) 2010 U.S. Dist. LEXIS 11210 (S.D.N.Y. Feb. 9, 2010) (J. Gardephe) .......................................................................................... 13

*Newburger, Loeb & Co., Inc. v. Gross*, 611 F.2d 423 (2d Cir. 1979) .......................................... 7

*Nomura Sec. Int'l, Inc. v. E\*Trade Sec., Inc.*, 280 F. Supp. 2d 184 (S.D.N.Y. 2003).................... 1

*Ortiz-Moss v. N.Y. City DOT*, 623 F. Supp. 2d 404 (S.D.N.Y. 2008) .......................................... 3

*Passalacqua v. County of Suffolk*, No. 21-811, 2022 U.S. App. LEXIS 5354 (2d Cir. Mar. 1, 2022) ............................................................................................................................. 10

*Polk v. Montgomery County*, 130 FRD 40, 42 (D. Md 1990)........................................................ 4

*Rates Tech. v. Mediatrix Telecom*, No. 05-CV-2755, 2010 U.S. Dist. LEXIS 165509 (E.D.N.Y. Jan. 5, 2010)................................................................................................................... 2

*Ravina v. Columbia Univ.*, No. 16-CV-2137 (RA), 2020 U.S. Dist. LEXIS 39478 (S.D.N.Y. Mar. 6, 2020) ............................................................................................... 14, 17, 19, 25

*Rozell v. Ross-Holst*, 576 F. Supp. 2d 527 (S.D.N.Y. 2008) ................................................ 15, 23

*Sanchez v. Matta*, No. CIV 03-0297 JB/LFG, 2005 U.S. Dist. LEXIS 21974 (D.N.M. July 29, 2005) .............................................................................................................................. 3

*Stanford Square v. Nomura Asset Capital Corp.*, 232 F. Supp. 2d 289 (S.D.N.Y. 2002)............. 7

*Syrnik v. Polones Constr. Corp.*, 2012 U.S. Dist. LEXIS 134188 (S.D.N.Y. Sep. 19, 2012)...... 13

*Tatum v. City of New York,* No. 06-cv-4290 (PGG)(GWG), 2010 U.S. Dist. LEXIS 7748 (S.D.N.Y. Jan. 28, 2010).................................................................................................................. 24

*Thieriot v. Jaspan Schlesinger Hoffman, LLP*, No. 07-cv-5315 (DRH) (AKT), 2016 U.S. Dist. LEXIS 144083 (E.D.N.Y. Oct. 18, 2016).................................................................... 7

*Velez v. Novartis Pharm. Corp.*, 2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30, 2010)...... 17

*Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp.*, 599 F. Supp. 509 (S.D.N.Y. 1984) ................................................................................................................................. 13

**Rules**

Fed. R. Civ. P. 6(d) .................................................................................................... 2

Fed. R. Civ. P. 68(d) .................................................................................................. 2

Fed. R. Civ. P. 72(b) .................................................................................................. 1

## PRELIMINARY STATEMENT

Plaintiff Dr. Effat Emamian objects to Magistrate Judge Aaron's Report and Recommendation ("R&R") on Plaintiff's Second Motion for Pre- and Post-Judgment Interest and Attorneys' Fees and Costs. (Dkt. No. 354). The R&R makes several errors of fact and law in that it (1) enforces an improperly timed offer of judgment, (2) fails to award pre-judgment interest up to the verdict, (3) fails to award interest from verdict to judgment on the entire award, (4) fails to award post-judgment interest on the entire award, (5) improperly reduces the hourly rates for attorneys' fees to historical rates not matching their skill and experience, (6) imposes significant percentage-based reductions to attorneys' hours beyond what is reasonable, and (7) improperly designates costs to go to Liddle & Robinson ("L&R") despite Plaintiff having paid L&R costs. Therefore, Plaintiff respectfully requests that this Court modify the R&R pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) as described herein.

## STANDARD OF REVIEW

The Court reviews the R&R *de novo* since "[a]ttorneys' fee determinations are considered 'dispositive' for purposes of Rule 72 of the Federal Rules of Civil Procedure." *McConnell v. ABC-Amega*, Inc., 338 F. App'x 24, 26 (2d Cir. 2009). "The court must undertake a *de novo* review of any portion of the report to which a specific objection is made on issues raised before the magistrate judge." *6D Global Tech., Inc. v. Lu*, 2016 WL 1756920 *1 (S.D.N.Y. May 3, 2016). Under the *de novo* standard, the Court makes an independent determination of the issue, giving no deference to any previous resolution. *Nomura Sec. Int'l, Inc. v. E*Trade Sec., Inc.*, 280 F. Supp. 2d 184, 198 (S.D.N.Y. 2003). The Court is not limited to consideration of evidence presented to the magistrate judge, but may review the entirety of the record. Fed. R. Civ. P. 72(b). *Rates Tech. v. Mediatrix Telecom*, No. 05-CV-2755, 2010 U.S. Dist. LEXIS 165509, at *5 (E.D.N.Y. Jan. 5,

2010). A district court's discretion to determine what constitutes a reasonable fee "is not unfettered." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

## ARGUMENT

### I.    As the Rule 68 Offer of Judgment Was Untimely Served, It Cannot Limit Plaintiff's Recovery.

Plaintiff objects to the finding that the Second Rule 68 Offer of Judgment ("Second OOJ") limits recovery of fees and costs past January 3, 2018. The plain reading of Fed. R. Civ. P. 68 states that the offer must be served 14 days *before* trial; not *as of the date* of trial. To accept the conclusion of the R&R would render the word "before" meaningless. The R&R asserts that the Second OOJ was timely because it was "served on January 3, 2018" even though the trial in this matter was set for and commenced on January 17, 2018. (R&R at 49).  Fed. R. Civ. P 68(a) makes clear that the OOJ must be made "[a]t least 14 days **before** the date set for trial . . ."  Although initially the Court set the trial to commence on January 18, 2018, it moved the start date back one day, to January 17, 2018. The "date set for trial" as provided by the Rule was January 17, 2018. This results in the OOJ being untimely. That is because Fed. R. Civ. P. 6 (a)(1)(a), which applies to "any time period specified in these rules," states that, in calculating time, the court must "exclude the day of the event that triggers the period." In this case, the date to be excluded is January 3, 2018. Excluding January 3, 2018, the 14-day period ended on January 17, 2018, which was the date of trial. (R&R at 49).

In addition, the Magistrate Judge failed to consider the impact of Fed. R. Civ. P. 68(d). The plain language of Rule 68 states that the necessary condition for an offer to be valid is that it is served "at least 14 days before trial." Fed. R. Civ. P. 68(a). Again, this rule must be read in conjunction with Rule 6. When computing this 14-day period, Rule 6(d) instructs that three days are added to the time when serving by mail, including FedEx. Fed. R. Civ. P. 6(d); L.R. 5.3

(clarifying that overnight delivery service is considered mail for purposes of service and computation of time). That Defendant took the risk of issuing the Rule 68 when they did should not mean that the Rules are interpreted any differently than provided in their plain language. Defendant did not allow Plaintiff three extra days to respond before the commencement of trial. Instead, the offer of judgment stated it was withdrawn 14 days after service. (Dkt. No. 347-1).

Further, the R&R improperly examines whether Plaintiff's counsel had knowledge of the OOJ before the time expired for acceptance. (R&R at 48). The R&R cites *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1429 (9th Cir. 1996), which confirms that a valid Rule 68 offer exists upon service. In *Magnuson*, the Ninth Circuit reversed the district court's enforcement of a Rule 68 offer not properly served and held that "actual notice" of the offer through fax or FedEx did not create an enforceable Rule 68 Offer. 85 F.3d at 1431; *see also Ortiz-Moss v. N.Y. City DOT*, 623 F. Supp. 2d 404, 405–06 (S.D.N.Y. 2008) ("In cases involving Rule 68 offers, service of process must comply with Fed. R. Civ. P. 5(b)." (quoting *Magnuson*, 85 F.3d at 1429)). Yet the R&R found Defendant's Second OOJ timely served on the grounds that Federal Rule of Civil Procedure 5 marks service as complete upon mailing. (R&R at 49). Plaintiff does not dispute that service is complete upon mailing, however that does not end the analysis. The R&R cites *Sanchez v. Matta*, but the question in that case was not whether an offer had been served in sufficient time in advance of trial. No. CIV 03-0297 JB/LFG, 2005 U.S. Dist. LEXIS 21974, at *33 (D.N.M. July 29, 2005). In *Sanchez*, Defendant made an offer several months before trial, and the court needed to determine whether to limit fees at the date that the offer was received or the date the offer was mailed. *Id*. at 33–34. Here, the issue is whether Defendant timely served the Rule 68 offer in accordance with Federal Rule of Civil Procedure 6.

The court should instead look to *Polk v. Montgomery County* to resolve this issue.  In *Polk*

the Court noted that the period required by Rule 68 excludes the date that trial begins:

> The party being served under the Rule therefore has a full 10 days to decide whether to accept or reject the offer. However, this provision would be rendered meaningless if, because of the serving party's failure to provide timely service of the offer, the case were to come on for trial before the expiration of the 10 day acceptance period. As a matter of statutory construction, it is irrelevant that the offer was, in fact, rejected in the instant case.

130 FRD 40, 42 (D. Md 1990). The *Polk* court instructs that one should count backwards from the trial date, as required by Rule 6, to determine if the offer was timely served. *Id.* Here, when the three mailing days are added and the date of the triggering event is excluded it is clear that the offer of judgment was untimely.

## II.    Plaintiff Is Entitled to the Full Amount of Pre- and Post- Judgment Interest.

We analyze Plaintiff's overall right to interest on this judgment in three parts: (1) pre-judgment interest up to the verdict on the back pay award; (2) pre-judgment interest on the verdict, which includes the back pay award plus the pre-judgment interest on that amount, pre-judgment interest from the verdict to the judgment on the award of emotional distress damages, and on Plaintiff's accumulated attorney's fees at that point; and (3) post-judgment interest on the judgment including all pre-judgment interest and attorney's fees.

### A.    Plaintiff Is Entitled to Pre-Judgment Interest to Verdict on Back Pay.

Plaintiff objects to the R&R's denial of pre-judgment interest on her back pay award from July 31, 2007 until the date of verdict—February 28, 2018. On June 8, 2018, the Court issued an opinion upholding the liability verdict but remitting the damage award for emotional distress from $2,000,000 to $200,000 and directing that if Plaintiff did not accept the remittitur, a new trial on emotional distress damages would take place. (Dkt. No. 238). The Court denied Defendant's motion for judgment as a matter of law and upheld the jury's $250,000 back pay award, noting that the jury awarded back pay for 2007 to 2010, a three-year employment contract period in which

4

Plaintiff would have received "lost wages and benefits" had Defendant not unlawfully discriminated against her. (Dkt. No. 238 at 37–40).

On August 8, 2018, Plaintiff moved for an order adjusting the back pay portion of her economic damage award to **include statutory interest pursuant** to N.Y. C.P.L.R. § 5004, as well as "other such relief that the Court deem[s] fit." (Dkt. Nos. 255–257). Defendant opposed this motion. (Dkt. No. 258). On December 11, 2018, the Court took two separate but related actions. First, most importantly, the Court granted Plaintiff's motion to amend or correct the judgment without further comment, specifically referencing only Docket Entry 255. (*See* Dkt. No. 277) ("Decision & Order granting 255 Motion to Amend/Correct"). This ruling is reflected only on the docket sheet. Second, the Court issued a three-page Opinion and Order which granted the Parties' joint request as set forth in their Joint Stipulation asking the Court to enter final judgment on the stipulation. What ensued thereafter was an appeal by the parties with the Second Circuit affirming the verdict on September 21, 2020. (Dkt. No. 288). On September 29, 2020, this Court vacated all previous fee motions that had been filed and directed the parties to submit new briefing on fees and costs. (Dkt. No. 290).

On October 9, 2020, the parties submitted a joint letter to the Court with a briefing schedule for "Plaintiff's motion for attorney's fees and costs and for **pre- and post-judgment interest**." (Dkt. No. 292). The letter further indicated that "Plaintiff will be submitting a supplemental application on this issue because "it appears that the Court never fully resolved that issue (pre-judgment interest) other than granting the Motion," since interest had not yet been added to the judgment. (Dkt. No. 292) (citing Dkt. Nos. 255, 277).[1]

Although the docket reflects that the Court granted Plaintiff's August 8, 2018, motion for

---

[1] The defendant has at no time challenged the timing of the application.

pre-judgment interest, the R&R mistakenly concludes that the Court never ruled on this motion and that a docket clerk incorrectly granted it on the docket. (R&R at 19). This is pure speculation. Magistrate Judge Aaron is therefore making an explicit recommendation to deny the Plaintiff's motion without any basis on the record and without the ability to inquire with the Judge who rendered the decision. This is incorrect, manifestly unjust, and an unfair reading of Judge Batts' actions. The only appropriate reading of what occurred is one of the following: (1) Judge Batts granted Plaintiff's motion seeking interest on the award; (2) the Plaintiff's motion was never actually decided by the Court, in which case it remains open; or (3) the clerk's office erred and Federal Rule of Civil Procedure 60(a) is the appropriate remedy.

The verdict was entered on February 28, 2018. Plaintiff filed her motion seeking pre-judgment interest on August 8, 2018. The Court granted Plaintiff's motion on December 11, 2018 and the Judgment was officially entered on December 12, 2018. In that December 11 Order, Judge Batts directed the Clerk to enter final judgment. (Dkt. No. 280). A fair reading is that, in referencing the motion, the Judge was indicating that prejudgment interest should be granted.[2]

Though Magistrate Judge Aaron found that Plaintiff "was required under Rule 59 (c) to file her motion to amend the Judgment within 28 days of the Judgment being entered, which she failed to do," (R&R at 20), Plaintiff preserved this right by filing her motion to amend the Judgment on August 8, 2018 (Dkt. No. 255), well before the Judgment was entered, and filing for a motion to extend time to file a "Notice of Taxation of Costs as well as Attorneys' Fees and Related Costs," and again filing a motion a bill of costs, for fees, other costs, and "other relief as

---

[2] Resolution of this issue is complicated by the fact that Judge Batts passed away before ruling on the motions for fees, costs and interest. Under the circumstances, this Court should construe what the Court did in the light most favorable to the Plaintiff since she was the prevailing party, made a timely motion for interest, and the ruling Judge is not present to clarify the intent behind her ruling.

the Court deem(s) fit" on December 26, 2018. (Dkt. Nos. 281, 282). The cases referenced by the R&R are inapposite because they do not make reference to the unique factual circumstance present in this case and, in fact, support Plaintiff's position because Plaintiff did preserve this right. *See, e.g.*, *Stanford Square v. Nomura Asset Capital Corp.*, 232 F. Supp. 2d 289, 291 (S.D.N.Y. 2002) ("Since Capital filed a timely motion to amend or alter a judgment under FRCP 59(e), there can be no question that Capital has not waived recovery of prejudgment interest.").

In fact, the prevailing party need not even make an application for interest to be awarded if damages are found. *Newburger, Loeb & Co., Inc. v. Gross*, 611 F.2d 423, 433–34 (2d Cir. 1979). In *Newburger*, the Second Circuit added prejudgment interest to an award where there had been no application for it at the District Court or at the Circuit Court: "[E]ven where a party has not sought prejudgment interest at any point during a proceeding, 'an award of prejudgment interest [may be] mandated by the interests of justice on the record before' the court so long as the 'award [is] consistent with state and federal law.'" *Thieriot v. Jaspan Schlesinger Hoffman, LLP*, No. 07-cv-5315 (DRH) (AKT), 2016 U.S. Dist. LEXIS 144083, at *12 (E.D.N.Y. Oct. 18, 2016) (citing *Newburger*. 611 F.2d at 433). Here, where Plaintiff clearly made her application known after the verdict was rendered, and where the Court granted the motion, the district court should find that pre-judgment interested is mandated by the interests of justice on the record before it.

Alternatively, the Court may find that Judge Batts never ruled on the motion and that the motion is still pending. If the motion is still pending, Your Honor may decide it. This is the position taken in Dr. Emamian's letter of October 9, 2020 requesting additional time to brief the issue. (Dkt. No. 292). Without an explicit statement from Her Honor, one must assume that she did not intend to deny Dr. Emamian interest on backpay in the face of controlling authority. The record on this point is ambiguous at best as there is no affirmative mention anywhere other than the docket

sheet of Her Honor's intention. *Morgan Guar. Trust Co. v Third Natl. Bank*, 545 F2d 758, 760 (1st

Cir 1976) (denying a Rule 60 motion requires a showing of a deliberate choice, not oversight).

Finally, should the Court find that an administrative error occurred, the Court may use

Federal Rule of Civil Procedure 60(a) to add pre-verdict pre-judgment interest to the back pay

award. Rule 60(a) provides that the Court "on motion or on its own, with or without notice" may

"correct a clerical mistake arising from oversight or omission whenever one is found in a judgment,

order, or other part of the record." Rule 60(a) can correct the "absence of an award of pre-decision

interest in a judgment" if the judgment "fail[s] to reflect the actual intention of the court." *In re

Frigitemp Corp.*, 781 F.2d 324, 327 (2d Cir. 1986). As adding pre-judgment interest to the back

pay amount reflects Judge Batts's intent, (Dkt. No. 277), the Court may add pre-judgment interest

to the back pay pursuant to Rule 60(a). While the R&R found Judge Batts never ruled on the

motion for pre-judgment interest, the docket reflects that Judge Batts granted the motion. *See id*.

The Court must also add pre-verdict pre-judgment interest for the same reason the R&R

found that post-verdict pre-judgment interest under C.P.L.R. § 5002 was appropriate. (R&R at

20–21). As N.Y. C.P.L.R. § 5002 states that "the amount of interest *shall* be computed by the clerk

of the court and included in the judgment," the R&R found Rule 60(a) allowed for addition of

interest during that time period. *Id*. (emphasis added).

Likewise, pre-verdict, pre-judgment interest is mandatory for NYCHRL backpay claims.

*See McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 672 N.Y.S.2d 230, 235 (N.Y. Co. Sup.

Ct. 1997) (quoting C.P.L.R. § 5001(a)) (finding that compensatory damages for emotional pain

and suffering were not eligible for pre-verdict pre-judgment interest, but back pay damages under

the NYCHRL were). Pre-judgment interest under New York law is mandatory as a "matter of

right." *Agence Fr. Presse v. Morel*, 645 F.App'x 86, 88 (2d Cir. 2016). In contrast, for pre-

judgment interest recovered pursuant to a federal statute, the Second Circuit has instructed that when damages "represent compensation for lost wages, 'it is ordinarily an abuse of discretion *not* to include pre-judgment interest.'" *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir. 1998).

The R&R cites *In re Frigitemp Corp.*, 781 F.2d 324 (2d Cir. 1986) to support the argument that prejudgment interest should not be awarded. However, the reasoning of *In re Frigitemp Corp.* supports the award of prejudgment interest. The Second Circuit, in discussing the precedent underlying its decision, recites the scenario before this Court: "we concluded that the Rule 60(a) motion was properly granted to the extent that is sought inclusion of interest for the period between the date of the jury's verdict and the date of the judgment, because under New York law, which governed, the court clerk was required to automatically include interest for the period in the judgment." *Id.* at 327. C.P.L.R. § 5001(c) states, "[t]he amount of interest shall be computed by the clerk of the court, to the date the verdict was rendered or the report or decision was made, and included in the total sum awarded." What counsels a different conclusion here is there is no indication of a decision to deny prejudgment interest on back pay, it was requested in the complaint (Dkt. No. 21) and has been a live issue in this litigation since before the appeal. In both *Lee* and *Frigitemp Corp.* the moving party first raised the issue well after the final judgment was entered and the matter was concluded. In *Lee*, the plaintiff did not seek interest in the complaint. Here, unlike in *Lee* or *Frigitemp Corp.* the final amount owed by the Defendant has not been determined, so the Court's interest in finality is not compromised.

As the date from which interest is to be computed is known, this Court or the Clerk of the Court may use that date to calculate the amount of interest to add to the judgment. "[I]nterest shall be calculated from the earliest ascertainable date the cause of action existed." C.P.L.R. § 5001(b). Plaintiff's back pay began on July 31, 2007. (Dkt. No. 238 at 40) (describing jury instructions).

The jury awarded back pay from July 31, 2007 to July 31, 2010, as evident from the verdict sheet. (Dkt. No. 256-1 at 4). Accordingly, the "amount of interest shall be computed by the clerk of the court, to the date the verdict was rendered or the report or decision was made, and included in the total sum awarded." C.P.L.R. § 5001(c).

While we contend it is unnecessary, the Court could look to Fed. R. Civ. P. 60 and find this correction is necessary as it "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice." *Passalacqua v. County of Suffolk*, No. 21-811, 2022 U.S. App. LEXIS 5354, at *4 (2d Cir. Mar. 1, 2022).

Accordingly, Plaintiff requests that the Court add $238,253.42 in pre-verdict, pre-judgment interest to her backpay award. (Moore Decl. ¶ 3).

> **B.     Plaintiff Is Entitled to Pre-judgment Interest on the Verdict, Which Includes the Back Pay Award Plus the Pre-Judgment Interest on That Amount, Pre-judgment Interest from the Verdict to the Judgment on the Award of Emotional Distress Damages, and on Plaintiff's Accumulated Attorney's Fees and Costs at That Point.**

Plaintiff objects to the R&R's omission of an award of 9 percent interest from date of verdict—February 28, 2018—to date of judgment—December 18, 2018—on (1) emotional distress damages, (2) pre-verdict, pre-judgment interest on backpay, and (3) attorneys' fees and costs. Plaintiff moved for an award of interest from verdict to judgment on the entire award, but the R&R makes no mention of this request and erroneously concludes no such request was made. (Dkt. No. 343, MOL at 8 and No. 349 Reply MOL at 3; R &R at 50–51).

Interest for this time period is again mandatory. The relevant statute, CPLR § 5002, states that the Clerk must add interest at 9 percent on the total sum awarded, which would include all damages, as well as attorneys' fees and costs, as they are part of the "total sum awarded." CPLR §§ 5002, 5004. The relevant statute, CPLR § 5002, requires recovery for the total sum awarded,

which would include all damages as well as interest. *Koch v. Greenberg*, 14 F. Supp. 3d 247, 286 (S.D.N.Y. 2014), *aff'd*, 626 F. App'x 335 (2d Cir. 2015) (awarding the plaintiff post-verdict pre-judgment interest on damages, including punitive damages, as well on pre-verdict pre-judgment interest, from the date of verdict until the date of final judgment).

First, Plaintiff is entitled to interest at 9 percent from verdict to judgment on her emotional distress damages of $200,000, regardless of remittitur, which amounts to $14,202.74. (Dkt. No. 344, Moore Decl. ¶43). The R&R erroneously states, "the Court notes that Plaintiff does not appear to be seeking pre-judgment interest on the emotional distress portion of the verdict." (R&R at 21); (MOL at 8). The R&R erred when it declined to award interest on emotional distress damages from verdict to judgment, "given that the amount of emotional distress damages awarded by the jury was reduced and the amount of such damages ultimately awarded was not finally set until the Judgment was entered." (R&R at 21). C.P.L.R. § 5002 interest is mandatory. *Koch*, 14 F. Supp. 3d at 286. For remitted damages, interest accrues under § 5002 on the remitted amount from the date of the verdict until judgment. *Id*. (finding that "[u]nder the plain language of § 5002" the plaintiff was "entitled to post-verdict, pre-judgment interest on his punitive damages award, from the date of that verdict . . . until the date the Court enters its final judgment" and that interest "will accrue on the remitted amount of $711,622, rather than on the full amount of $12,000,000"). Plaintiff requests that the Court direct the Clerk to add interest from verdict to judgment on emotional distress damages.

Second, Plaintiff is entitled to 9 percent interest from verdict to judgment on her pre-verdict pre-judgment interest on the backpay amount of $238,253.42, *see supra* II.A, which totals $17,213. (Moore Decl. ¶7). As pre-verdict pre-judgment interest on backpay is included in the "total sum awarded," C.P.L.R. § 5002 requires that the Clerk of the Court also add 9 percent interest on this

amount, as Plaintiff requested in her fee motion. (MOL at 8, 29); *Koch*, 14 F. Supp. 3d at 286. Plaintiff requests that the Court direct the Clerk to add interest from verdict to judgment on pre-verdict pre-judgment interest on backpay.

Third, Plaintiff is entitled to mandatory 9 percent interest on attorneys' fees and costs. The R&R does not acknowledge Plaintiff's request for interest on attorneys' fees and costs during this time. The R&R awarded $960,570 in fees and $134,855.66 in costs ($1,095,425.66 total). (R&R at 50). As CPLR § 5002 mandates 9 percent interest on the "total sum awarded" from date of verdict to date of judgment, the R&R should have awarded at least $79,140.78 in interest on fees and costs. (Moore Decl. ¶ 9). Plaintiff requests that the Court direct the Clerk to add interest on total fees and costs as awarded by this Court in ruling on the R&R based either on the amount awarded or any adjusted amount depending on how this Court resolves other issues in this objection.

### C.    Plaintiff is Entitled to Post-Judgment Interest from the Date of Judgment until Defendant Fulfills Its Obligation to Pay.

Plaintiff objects to the omission of post-judgment interest on the total judgment, as she is entitled to post-judgment interest on attorneys' fees and costs, not only damages and pre-judgment interest. (R&R at 21, 50). In her fee petition, Plaintiff requested post-judgment interest on attorneys' fees and costs and established that Second Circuit law and the statute providing for post-judgment interest—28 U.S.C. 1961(a)—require post-judgment interest on attorneys' fees and costs. (MOL at 9); (Reply at 3–4) (citing *Cappiello v. ICD Publications, Inc.*, 720 F.3d 109, 112 (2d Cir. 2013) (finding that judgments rendered in federal court are universally subject to post-judgment interest under the federal rate regardless of the underlying claims)). Post-judgment interest accrues on attorneys' fees and costs from December 18, 2018. *Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp.*, 599 F. Supp. 509, 523 (S.D.N.Y. 1984).

The R&R erroneously makes no mention of Plaintiff's request and cites no law supporting its omission. As post-judgment interest "is awarded as a matter of course for any money judgment," the R&R erred in its omission. *Syrnik v. Polones Constr. Corp.*, 2012 U.S. Dist. LEXIS 134188, at *10 (S.D.N.Y. Sep. 19, 2012). Plaintiff respectfully requests post-judgment interest on the total judgment, including damages, pre-verdict interest, interest from verdict to judgment, attorneys' fees, and costs at the Treasury yield rate for the calendar week preceding the entry of judgment on December 12, 2018, which was 2.7%, with the interest compounded annually on her award and accruing until the date of payment. *See* § 1961(a),(b); *Mugavero v. Arms Acres, Inc.*, No. 03 Civ. 05724 (PGG), 2010 U.S. Dist. LEXIS 11210, at * 40–42 (S.D.N.Y. Feb. 9, 2010).

## II.    Hourly Rates in Attorneys' Fee Awards Must Match Current Rates that Reflect Attorneys' Skill and Experience.

Plaintiff objects to the recommended reduced hourly rates, as they do not reflect the attorneys' skill and experience, are no longer the current customary rates in the Southern District of New York, and do not account for the complexity of the case. The NYCHRL provides for the prevailing party to recover "reasonable attorney's fees," N.Y.C. Admin. Code § 8-502(g), which the Court must determine "broadly in favor of discrimination plaintiffs." *Albunio v. City of N.Y.*, 947 N.E.2d 135, 137 (NY Ct. App. 2011); N.Y.C. Admin. Code § 8-130(c).

Current, not historical, hourly rates are appropriate, especially in a multi-year litigation. The R&R recommendation based on historical rates was clearly in error. The R&R recommends hourly rates based upon the prevailing rate for legal work during "the time period in which it was performed." (R&R at 27). The Second Circuit has remanded fee awards in employment discrimination cases where the district court failed to award fees at current rates, as "compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal

13

services are performed." *Lochren v. Cty. of Suffolk*, 344 F. App'x 706 (2d Cir. 2009); *Ravina v. Columbia Univ.*, No. 16-CV-2137 (RA), 2020 U.S. Dist. LEXIS 39478, at *20-21 (S.D.N.Y. Mar. 6, 2020); *Mugavero v. Arms Acres, Inc.*, 2010 U.S. Dist. LEXIS 11210, at *17 (S.D.N.Y. Feb. 9, 2010) (finding current rates the "appropriate means of compensating attorneys").

The lodestar should be based on "prevailing market rates," *Blum v. Stenson*, 465 U.S. at 895, and current rates, rather than historical rates, should be applied in order to compensate for the delay in payment, *Missouri v. Jenkins*, 491 U.S. 274, 283–84 (1989); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (instructing district court on remand to apply "current rates, rather than historical rates" in seven-year litigation). Awarding an hourly rate for work performed over multiple years of litigation does not adequately compensate Plaintiff's counsel, who expended significant time and resources on a contingency fee basis to allow Plaintiff to successfully litigate her claims against Defendant for its discriminatory actions. Accordingly, Plaintiff asks the Court to award current rates as requested in her fee motion.

To the extent that this Court alters the recommendation of the Magistrate with respect to reasonable time, this Court should adjust the amounts awarded based on any increase in the hours at the adjusted rates for which compensation will be awarded.

### A.    Liddle & Robinson

The requested hourly rate of $735.08 for Jeffrey Liddle for the 45.25 hours of work performed reflects his skill and experience. The R&R erred in its award of $600, which it found appropriate based on what courts in the District awarded from 2008 to 2010. (R&R at 26) (citing *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008)).

Hourly rates of $590.73 for James A. Batson, who graduated law school in 1993, and $566.37 for Christine A. Palmieri, who graduated law school in 1994, were requested in Plaintiff's

fee motion. (Dkt. No. 344-27). The R&R errs in recommending an hourly rate of $450 based on rates from 2007 to 2008 for attorneys of similar skill and experience. (R&R at 27) (citing *Heng Chan v. Sung Yue Tung Corp.*, No. 03-CV-06048 (GEL), 2007 WL 1373118, at *3 (S.D.N.Y. May 8, 2007)). These rates are appropriate given their skill and experience. Mr. Batson was a partner with 13 years of experience in employment-related matters at the time of his representation from 2007 to 2011. (R&R at 27). Ms. Palmieri, a partner with 14 years of experience in 2008, managed the case day-to-day. *Id*. Mr. Liddle, who worked with both partners for numerous years, attests to their skill and experience; both worked at L&R—a firm that frequently handled high-stakes employment matters—for approximately 20 years. (Dkt. No. 344-27) (Liddle Decl. at 6).

Plaintiff requests $575 for attorney David M. Marek's hours and $425 for James W. Halter rather than the reduced rates of $325 recommended. The R&R reduces both attorneys' rates, as they only billed nine and ten hours respectively in connection with depositions, but such work is compensable. While the biographical information submitted only included educational information for Mr. Marek (Columbia Law School, 1999) and Mr. Halter (NYU School of Law, 2001), this was a reasonable and efficient use of resources. As the recommended rate of $325 was within the customary range in 2009, the rates Plaintiff requested are more than reasonable. *Mugavero*, 2010 U.S. Dist. LEXIS 11210, at *15. Similarly, Plaintiff requested a modest rate of $280 for Jessica H. Savage and $260 for Dana W. Weiberg, who graduated law school in 2007 and 2008 respectively. The R&R erred in its recommendation to reduce their rates further to $250. (R&R at 28); *Lewis v. Am. Sugar Ref., Inc.*, No. 14-CV-02302, 2019 U.S. Dist. LEXIS 18058, 2019 WL 116420, at *4 (S.D.N.Y. Jan. 2, 2019) (awarding $300 for associates).

### B.    Alterman & Boop and Michael Dowd

Plaintiff requests a $300 hourly rate for Lorna Peterson, an A&B associate, as the reduced

rate of $250 in the R&R improperly uses a historical rate. (R&R 33–34) (awarding a rate "taking into account the time period in which her work was performed"). Ms. Peterson graduated law school in 2008, and a $300 hourly rate would be appropriate even considering her years of experience at the time of the litigation. *Lewis*, 2019 U.S. Dist. LEXIS 18058, at *4.

Plaintiff requests a $400 hourly rate for Niall Macgiollabhui, who was a mid-level associate for Michael Dowd, as the reduced rate of $350 in the R&R is an improper historical rate. (R&R at 34). While the R&R cited a 2017 case awarding $350 to a mid-level associate, a current rate of $400 is reasonable for Mr. Macgiollabhui, who was admitted to practice law in 2007 and worked as a solicitor in the Irish courts for three years prior. (Dkt. No. 344-6 at ¶ 18).

### C.    Beldock Levine & Hoffman and Joshua Moskovitz

Plaintiff requests a $700 hourly rate for Jonathan Moore, a BLH partner with over 40 years of experience as a civil rights practitioner, rather than the $650 rate recommended. The R&R finds "a reasonable hourly rate for Moore during the time period June 2016 to January 2018 is $650," as his rate was set to $650 in 2014 for *Floyd et al. v. The City of New York, et al*., No. 08-CV-01034 (S.D.N.Y.) (SAS). Although this Court declined to award a $700 hourly rate for Mr. Moore in 2020, instead awarding $600 because the case was a "single-plaintiff, single-defendant Section 1983 action in which the Complaint is seven pages long and in which the defendant defaulted." *Greenburger v. Roundtree*, 2020 U.S. Dist. LEXIS 147673, at *17 (S.D.N.Y. Aug. 16, 2020), that case has no relevance to the issue of a reasonable hourly rate in this complex employment case.  A current  hourly rate of $700 is reasonable given Mr. Moore's skill and experience.  *See, e.g.*, *Ravina*, 2020 U.S. Dist. LEXIS 39478, at *52 (awarding $780 hourly rate for employment law partner); *Velez v. Novartis Pharm. Corp.*, 2010 U.S. Dist. LEXIS 125945, at *63 (S.D.N.Y. Nov. 30, 2010) (awarding $750 hourly rate for two lead trial counsel and $700 for another attorney).

Plaintiff requests a $575 hourly rate for David Rankin, a BLH partner with over 15 years of experience, rather than the $500 recommended. The R&R found $500 reasonable, as this was Mr. Rankin's rate in *Greenburger*. (R&R at 40). Similarly, $575 is more appropriate for a case of this complexity and given Mr. Rankin's skill and experience. *Bailey v. Pataki*, No. 08-cv-8563 (JSR), 2016 U.S. Dist. LEXIS 82566, at *33 (S.D.N.Y. June 16, 2016) (awarding $550 to three attorneys with approximately a decade of experience).

Plaintiff requests a $450 hourly rate for Luna Droubi, a BLH partner as of 2018 with over 10 years of experience, rather than the $400 recommended. The R&R acknowledges that this Court determined Ms. Droubi's rate to be $425. (R&R at 41 (citing *Greenburger*, 2020 WL 4746460, at *6). However, it then went on to apply an historical rate to her work, finding $400 more appropriate as an associate rate for 2016 to 2018. *Id*. Notably, Defendant did not oppose the rate requested for Ms. Droubi. A modest increase to $450 from the $425 rate awarded in *Greenburger* is appropriate.

Plaintiff requests an hourly rate of $475 for Joshua Moskovitz, who has over 10 years of experience and is now a solo practitioner, rather than the $400 recommended. The R&R improperly sets Mr. Moskovitz's rate as the historical rate that he previously charged as an associate. (R&R at 41 n.33). Setting aside the improper use of historical rates, 75 percent of Mr. Moskovitz's work was performed as a partner in his own firm and as counsel to BLH. (Dkt. No. 344-4 ¶ 12 (Moskovitz Decl.)). The vast majority of Mr. Moskovitz's work occurred when he was a partner in his firm and had more experience than he did when he was an associate at BLH. Thus, it was improper to recommend the same hourly rate for Mr. Moskovitz that he charged previously as an associate. *LeBlanc-Sternberg*, 143 F.3d at 764.

The R&R does not cite any case that assigned an hourly rate lower than $425 per hour for partners or counsel, nor any *recent* decision assigning a rate of $400 per hour for an attorney with

17

the experience of Mr. Moskovitz and Ms. Droubi. The cases cited[3] were decided eight to ten years before the work here was performed. The Magistrate Judge erred in using historical and not contemporary rates. He also did not to look to more recent cases given that "fee awards in this District have been increasing over time," as noted by Circuit Judge Richard Sullivan. *Abdell v. City of N.Y.*, No. 05-CV-8453, 2015 U.S. Dist. LEXIS 25510, *11 (S.D.N.Y. Mar. 2, 2015).

More recent decisions have found that a reasonable hourly rate, even at the associate level, for attorneys with experience commensurate to that of Mr. Moskovitz and Ms. Droubi, is at least $475 per hour. *Casaccia v. City of Rochester*, No. 17-CV-6323, 2021 U.S. Dist. LEXIS 175727, at *9–11 (W.D.N.Y. Sep. 15, 2021) (applying out-of-district, New York City rates and awarding $475 per hour for a civil rights attorney with seven years' experience); *see also Homeaway.com, Inc. v. City of N.Y.*, 523 F. Supp. 3d 573, 598 (S.D.N.Y. 2021) (awarding $500 per hour for "counsel" with less than 15 years' experience during the relevant period); *Jones v. City of N.Y.*, No. 16-CV-8080, 2021 U.S. Dist. LEXIS 159888, at *6 & *55 (S.D.N.Y. Aug. 24, 2021) (awarding $450 per hour for an attorney who graduated law school in 2012 and had six years of experience during the relevant period); *Ravina*, 2020 U.S. Dist. LEXIS 39478, at *9 (awarding hourly rates 35 percent less than requested, which resulted in an hourly rate of $487.5 for "senior litigation counsel" Amy Donehower and David Tracey, who were admitted to practice in 2014, and Melinda Koster, who was admitted in 2013).

### III. The Lodestar Is A Reasonable Fee, And A Percentage-Based Reduction Fails to Compensate for Reasonable Hours.

The Magistrate's application of "rough justice" has gutted the work of experienced and

---

[3] *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008); *Simmonds v. New York City Dept. of Corrections*, No. 06-CV-05298, 2008 WL 4303474, at *5, 10 (S.D.N.Y. Sept. 16, 2008); *Heng Chan v. Sung Yue Tung Corp.*, No. 03-CV-06048 (GEL), 2007 WL 1373118, at *3 (S.D.N.Y. May 8, 2007).

dedicated civil rights and employment discrimination attorneys in this complex, hard-fought litigation against one of the nation's premier defense firms.

### A.    Liddle & Robinson

Plaintiff objects to the percentage-based reductions to hours of work attorneys performed on her behalf. The R&R recommends a 25 percent "across-the-board percentage reduction" in the number of L&R's hours based on (1) unsuccessful claims, namely defamation and negligence and promissory estoppel for work on mouse lines, and (2) vague entries. (R&R 29–30). In support, the R&R cites *Margel v. E.G.L. Gem Lab Ltd.*, 2009 U.S. Dist. LEXIS 9357, at *18 (S.D.N.Y. Feb. 6, 2009). In *Margel*, the Court examined vague entries and applied a 20 percent deduction *to those entries* as a means of eliminating waste. *Id*. Here, the R&R applies a 20 percent reduction to *all* L&R time entries. This was an error.

A close examination of the time sheets provided by L&R does not support the proposed 25% reduction in time, either for so-called "vague entries" or for work on claims on which the Plaintiff did not prevail.  First, the work on the claims that were unsuccessful were de minimis and were, in any event, part of the same set of facts that formed the basis of the discrimination claims. Moreover, as for reductions based on the defamation, negligence, and promissory estoppel claims, the R&R cites *Aiello v. Town of Brookhaven*, No. 94-CV-2622, 2005 U.S. Dist. LEXIS 11462, *16 (E.D.N.Y. June 13, 2005), which supports no reduction for unsuccessful state law claims.

Second, there is no showing that the time sheets contain so many vague entries such that they would support a 25% across the board reduction. The fact that L&R had, as the Magistrate said, "many" vague time entries does not support a 25% reduction in the time. Although the Magistrate admitted "[i]t is impossible to say with precision the extent to which L&R's attorneys' hours should be reduced based on the foregoing," the Magistrate still concluded that all hours

should be reduced by 25%. To the extent that this Court should feel inclined to make an across the board reduction in time, that amount should not exceed 5% of their lodestar. (Moore Decl. Ex. 1)

### B.    Alterman & Boop and Michael Dowd

Plaintiff objects to the drastic 60 and 75 percent reduction to A&B and Dowd's hours respectively. Rather than engaging in even a cursory examination of the actual time entries that constitute the lodestar, which is presumed reasonable, the Magistrate applied an across the board "percentage deduction as a practical means of trimming fat." (R&R at 24) (citing *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006)). The percentage reductions go beyond trimming fat and do not provide Plaintiff's attorneys reasonable compensation for work that contributed to the excellent results achieved at trial. The R&R reduced A&B's hours by 60 percent and Dowd's time by 75% because of "substantial amounts of time learning the facts of the case and getting up to speed for trial," including securing the file from L&R. (R&R at 35, 36).

However, the facts of this case tell a different story. The case began with the filing of the complaint on May 18, 2007. (Dkt. No. 1). Extensive motion practice and discovery by L&R ensued. Efforts were made in good faith to settle the case, including a referral of the matter to Magistrate Dollinger. (Dkt. No. 32). Apparently as a result of a conflict that arose with the Plaintiff, L&R moved to withdraw from the case, over the objection of the Plaintiff, but without objection by the Defendant. This motion was granted by the Court on April 7, 2011. (Dkt. No. 55).

While Plaintiff searched for successor counsel, the Defendants filed numerous motions with the Court. (Dkt. Nos. 57–63, 70–79). Far from having the luxury to "ramp up" their understanding of the case, A&B and Dowd, were immediately required to delve headlong into motion practice. New counsel also filed a series of motions from 2011 to 2013 on behalf of the

Plaintiff.   (Dkt. Nos. 80–81, 96–98, 100–102). Defendant filed detailed oppositions to these motions. (Dkt. Nos. 103–107). From September 2013 until April 2016, the docket sheet reflects very little motion practice. During this span of over 32 months, Defendants made no motion for the court to set a trial date. In 2016, A&B and Dowd were forced to file their own motion to withdraw based on unforeseen medical issues involving Mr. Alterman. (Dkt. No. 118). Again, Plaintiff played no part in delaying the speedy resolution of this case. By the end of the last quarter of 2016, Plaintiff had engaged BLH, who brought this trial to a successful conclusion based on their own hard work and the cumulative work of all counsel in the case. This set of circumstances explains why Plaintiff had to engage three sets of counsel: it was not because she was seeking to avoid trial but due to factors beyond her control. And at no time did the Defendant object to this delay. In fact, they took advantage of these interruptions to engage in even more motion practice and seek more discovery. They should not now be rewarded by some arbitrary and capricious reductions in her counsel time, all of which contributed to the result in this case.

These proposed reductions do not take into consideration the significant time spent by A&B attorneys responding immediately to Defendant's *Motions in Limine*, Daubert motions, and preparation for mock jury panels. (Alterman Decl. ¶¶ 3–5). Accordingly, a 60 and 75 percent across the board reduction does not properly compensate the work of prior counsel. The R&R justified an enhanced reduction for Dowd because he was "brought in to be part of the trial and offer his experience trying cases," and thus he "never performed the task he was brought in to do" since he withdrew before trial. (R&R at 37, 38). In fact, until they were forced to withdraw because of medical issues, these attorneys were in fact performing tasks they were hired to do.  As the Second Circuit has noted, because most legal skills are transferrable, in establishing the lodestar, courts look to an attorney's overall experience rather than the attorney's experience in a particular area of

practice. *A.R. ex rel. R.V. v. New York City Dep't of Educ.,* 407 F.3d 65, 82 (2d Cir. 2005).

Because both A&B and Dowd performed significant work preparing the case for trial, including conducting a mock jury exercise, which led to Plaintiff success, there time is reasonable and compensable. (Dkt. No. 344-8 at ¶¶ 32, 33). BLH counsel analyzed the results of the mock jury trial, identified strengths and weaknesses of the case as presented, and revised trial strategy. (Dkt. No. 348 at ¶ 19). Dowd's work preparing for trial allowed BLH to staff the case leanly and not expend time and resources conducting its own mock trial or engaging trial consultants. *Id*.

The R&R also inappropriately applied a 75 percent reduction to the hours of paralegal Kate Waterhouse and attorney Macgiollabhui, who were employed by Dowd but worked collaboratively with A&B. (Dkt. No. 344-6 at ¶ 20). Ms. Waterhouse is the only paralegal from either firm who worked on the case at the time. As Ms. Waterhouse performed more hours of work than Mr. Dowd, the R&R's enhanced reduction is especially inappropriate. To the extent the Court is inclined to make an across the board reduction, that amount should not exceed 10%. (Moore Decl. Ex. 2).

### C.    Beldock Levine & Hoffman and Joshua Moskovitz

Plaintiff objects to the 25 percent reduction to BLH hours and the 60 percent reduction to Mr. Moskovitz's hours. The R&R improperly reduced BLH hours based on "degree of success." (R&R 37, 43). A $2.25 million jury verdict, remitted to $450,000, is not limited success. Conducting a lengthy jury trial and arguing a successful appeal to the Second Circuit is not limited success. The R&R cites *Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008), which describes the "degree of success" as the most critical factor in a fee determination. (R&R at 23). The court in *Barfield* affirmed a 50 percent reduction to fees based on limited success for a plaintiff who recovered $1,744.50 in damages. 537 F.3d at 152. Here, as "it can hardly be argued" that a $2.25 million jury verdict finding that Rockefeller University

unlawfully discriminated against Dr. Emamian in her employment, remitted to $450,000, constitutes "limited" success, a reduction is inappropriate. *Abdell*, 2015 U.S. Dist. LEXIS 25510, at *18 (finding that $185,000 damages award among four Plaintiffs "can hardly be argued" as "limited" success).[4] The Court should not reduce any of BLH's time spent prior to trial.

As Magistrate Judge Aaron indicates, BLH performed necessary work that did not include any redundant ramp-up time. This is because Defendant's aggressive litigation tactics required counsel to perform many tasks at an expedited pace including a forensic search of Plaintiff's computer—which led to a 50 page privilege log on the eve of trial—preparing for cross examinations of witnesses that had not been deposed, negotiating relevant provisions of deposition transcripts to be used at trial, negotiating and preparing exhibits for trial, preparing arguments for the inclusion or exclusion of the same, and attending and participating in numerous pretrial conference in the run up to trial. In the end, as a result of BLH's efforts, building off the efforts of prior counsel, the jury found that Dr. Emamian had been discriminated against on the basis of her race and national origin and awarded back pay and emotional distress. Nearly all witnesses supported those claims or spoke to emotional distress damages related to the same, which Dr. Emamian was also awarded. The successful trial outcome is a testament to the pretrial preparation that BLH attorneys engaged in, which involved hundreds of exhibits and scores of witnesses. To the extent that this Court should feel inclined to make an across the board reduction in time, that amount should not exceed 5%. (Moore Decl. Ex. 3).

Even a cursory examination of the docket sheet listing lawyers, demonstrated that BLH's streamlined discovery and trial effort was successful against a set of defendant's lawyers that took

---

[4] Rejection of a Rule 68 offer higher than the ultimate damage award does not warrant a reduction based on limited success. *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 542 (S.D.N.Y. 2008).

up more than two rows of the courtroom. The results Plaintiff's attorneys obtained support a fully compensable fee, even if only one claim is ultimately successful. *Tatum v. City of New York,* No. 06-cv-4290 (PGG)(GWG), 2010 U.S. Dist. LEXIS 7748, at *38–39 (S.D.N.Y. Jan. 28, 2010) (noting that "excellent" results support a fully compensable fee and declining to reduce a fee award on a $1 million jury verdict by more than 15 percent despite several unsuccessful claims).

Plaintiff also objects to the 60 percent reduction to Mr. Moskovitz's hours. The R&R erred in making this reduction as a result of "ramp-up time," when Plaintiff's counsel's time records prove that he spent much of his time litigating new discovery demands and preparing for trial. (Moore Decl. Ex. 5A) (highlighting arguable "ramp-up time"). Mr. Moskovitz's ramp-up time encompassed 24.9 hours of his time as an associate at BLH and 26.5 hours of his time in his own practice, for a total of 51.4 hours. Yet, the R&R recommends a 60 percent reduction of more than 118 hours. Accordingly, Plaintiff asks the Court to award Mr. Moskovitz a reduced rate of $475 per hour, which is less than the rate he is presently paid in this district by hourly paying clients, (Dkt. No. 344-4 at ¶ 20), with no more than a 10 percent reduction.

### IV.    Plaintiff Should Fully Recover for Her Reasonable Out-of-Pocket Costs.

Plaintiff expended a large amount of money to ensure success in this litigation and should be properly reimbursed for her out-of-pocket costs. *See* N.Y.C. Admin Code § 8-502(g). These costs include, but are not limited to: fees for consulting with other attorneys, and the filing of an EEOC claim, which is a prerequisite to bringing a Title VII claim.

Plaintiff objects to the R&R's failure to award her costs for all experts. "[C]ourts in this District routinely reimburse prevailing parties for the costs of expert witnesses and consultants, regardless [of] whether the expert testified at trial." *Ravina*, 2020 U.S. Dist. LEXIS 39478, at *45. Comprehensive Rehab performed a neuropsychological evaluation of Plaintiff and reported

findings to Dr. Robert Goldstein, who testified at trial about Plaintiff's emotional distress damages. (Dkt. Nos. 344-14 at 23; 344-19 at 15). Plaintiff paid $3,000 out-of-pocket for this expert and submitted documentation to confirm payment. (Dkt. No. 344-15 at 18). Plaintiff consulted with Friedman LLP/Eco-Stat, who prepared an economic loss evaluation and report, for which Plaintiff paid $2,600 and confirmed payment. (Dkt. Nos. 344-13 at ¶ 22, 344-19 at 8; Dkt. No. 344-15 at 20, 23). Plaintiff objects to the R&R awarding only $40,000 of the $60,000 in DOAR mock trial costs. *Ravina*, 2020 U.S. Dist. LEXIS 39478, at *47 (awarding $100,000 for DOAR services).

Plaintiff objects to the R&R awarding costs to L&R, when Plaintiff demonstrated she has reimbursed L&R for this amount. (R&R 31, 32). The R&R offers no explanation for awarding these costs directly to L&R instead of Plaintiff. Plaintiff already paid substantially all of the costs incurred during L&R's representation, which were in the total amount of $60,763.09. Such payments are included in her declaration, as Mr. Liddle stated that his clients separately paid for out-of-pocket disbursements. (Dkt. No. 344-24) (Liddle Decl. at ¶ 25). Plaintiff also paid a portion of attorneys' fees to L&R. As a result, Plaintiff requests that the Court award directly to her the $80,755.49 she already paid to L&R in costs and fees. (Dkt. No. 344-13) (Emamian Decl. at ¶ 36).

## CONCLUSION

Based on the foregoing, Plaintiff respectfully objects to the Magistrate Judge's Report and Recommendation as identified above and recommends that the Court award the fees and costs outlined in the Moore Declaration. In addition, because the lodestar together with the judgment now exceeds the Second OOJ, and because the Court should not enforce the Second OOJ, this Court should award fees and costs going forward based on Plaintiff's original fee and costs submission.

Dated: New York, New York
       March 18, 2022

                                    Respectfully submitted,

                                    BELDOCK LEVINE & HOFFMAN LLP


                              By: _____
                                    Jonathan C. Moore
                                    David B. Rankin
                                    Luna Droubi
                                    Regina Powers


                                    *Attorneys for Plaintiff Effat Emamian*

26