UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EFFAT S. EMAMIAN,

                              Plaintiff,

              - against -

ROCKEFELLER UNIVERSITY,

                              Defendant.

**AMENDED
MEMORANDUM
OPINION & ORDER**[1]

7 Civ. 3919 (PGG) (SDA)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Effat S. Emamian prevailed at trial on a New York City Human Rights

Law ("NYCHRL") discrimination claim against her former employer, Defendant Rockefeller

University.  She moves to "adjust" a December 12, 2018 judgment to include (1) pre- and post-

judgment interest, and (2) an award of attorneys' fees and costs.  (Judgment (Dkt. No. 280); Pltf.

Mot. (Dkt. No. 342))

        Plaintiff filed her motion for interest and an award of attorneys' fees and costs on

October 29, 2021.  (Dkt. No. 342)  This Court referred Plaintiff's motion to Magistrate Judge

Aaron for a Report and Recommendation ("R&R").  (Dkt. No. 350)  On February 9, 2022, Judge

Aaron issued a thorough and well-reasoned 51-page R&R recommending that Plaintiff's motion

be granted in part and denied in part.  (R&R (Dkt. No. 354))

        For the reasons stated below, the R&R will be adopted in part, and Plaintiff's

motion will be granted in part and denied in part.

---

[1] The Court issues this Amended Memorandum Opinion and Order to correct two typographical
errors in the conclusion of the April 26, 2023 Memorandum Opinion and Order: erroneous
references to "Defendants' motion" and "Defendant's final damages award."  (Dkt. No. 366 at
55)  This amended opinion now refers to to "Plaintiff's motion" and "Plaintiff's final damages
award."

**BACKGROUND**

I.    <u>FACTS</u>[2]

          "Emamian, an Iranian-born neuroscientist who wears a traditional Iranian

headscarf," worked in the lab of Dr. Paul Greengard at Rockefeller University from 2004 to

2007, under a "three-year appointment as a Research Assistant Professor." <u>Emamian I</u>, 971 F.3d

at 383. While she worked in Greengard's lab, Greengard "made her feel uncomfortable by

asking her numerous questions about her headscarf with a 'sarcastic' and 'negative' attitude,

despite her attempts to change the subject." <u>Id.</u> (quoting Emamian's trial testimony). Emamian

was treated worse than "other non-Middle Eastern employees in Greengard's lab during this

time," including by not being given "an office or a computer," and others in the lab repeatedly

"ridiculed and humiliated" her. <u>Id.</u> at 383-84. After a colleague saw her pushing a cart, he

emailed "the entire lab" making a joke about "cart drivers . . . and camel drivers," which

Emamian understood to be ethnic slurs, but when she complained to Greengard, he said the

email was not "objectionable." <u>Id.</u> at 384 (quotations omitted). Emamian reported

discrimination to University administrators in 2005, but a subsequent "internal investigation

concluded that Greengard was not motivated by discrimination." <u>Id.</u>

---

[2] The parties have not objected to Judge Aaron's factual statement, and this Court adopts it in full. <u>See Silverman v. 3D Total Solutions, Inc.</u>, No. 18 CIV. 10231 (AT), 2020 WL 1285049, at *1 n.1 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section and takes the facts characterized therein as true."); <u>Hafford v. Aetna Life Ins. Co.</u>, No. 16-CV-4425 (VEC)(SN), 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts [the factual statement] in full.").

The Second Circuit's decisions denying the parties' cross-appeals from the judgment provide further background for this long-running litigation. <u>See Emamian v. Rockefeller Univ.</u> ("<u>Emamian I</u>"), 971 F.3d 380 (2d Cir. 2020); <u>Emamian v. Rockefeller Univ.</u> ("<u>Emamian II</u>"), 823 F. App'x 40 (2d. Cir. 2020).

"Throughout this period, Emamian began experiencing intensifying mental health issues," including "generalized anxiety disorder and . . . compulsive hair-pulling" as a result of extreme stress, and she ultimately "became severely addicted" to sleeping pills that she had been prescribed for insomnia.  Id.  "On July 31, 2007, Emamian's three-year appointment at Rockefeller expired, and she was denied reappointment.  Since the end of her time at Rockefeller, Emamian has not found other employment despite applying to positions throughout the United States and Canada.  She attributes this circumstance to Greengard's refusal to help her secure a new position."  Id. at 384-85.

## II.   PROCEDURAL HISTORY

Attorneys from four law firms have appeared as counsel of record for Emamian in this litigation:  Liddle & Robinson, L.L.P. (the "Liddle Firm"), the Law Offices of Michael G. Dowd (the "Dowd Firm"), Alterman & Boop LLP (the "Alterman Firm"), and Beldock, Levine & Hoffman LLP (the "Beldock Firm").

> [Represented by the Liddle Firm,] Emamian filed suit on May 18, 2007, alleging, among other things, discrimination and retaliation based on race, national origin, religion, and sex under Title VII, the New York State Human Rights Law, and the NYCHRL.  On June 15, 2009, following dismissal of several of her claims, Emamian amended her complaint to add negligence and promissory estoppel claims stemming from Rockefeller's alleged failure to preserve certain mouse lines she used in her research.
>
> On July 29, 2010, the parties submitted their proposed jury instructions. . . . As of August 31, 2010, the case was trial-ready.  However, two separate withdrawals of Emamian's counsel – [the Liddle Firm] in 2011 and [the Alterman and Dowd Firms] in 2016 – delayed further proceedings.  Emamian's present counsel [at the Beldock Firm] filed notices of appearance in July 2016.

Emamian I, 971 F.3d at 385.

During the litigation, the University served Emamian with two offers of judgment:  an August 25, 2011 offer in the amount of $850,000.00, inclusive of attorneys' fees

and costs; and a January 3, 2018 offer in the amount of $2 million, inclusive of attorneys' fees

and costs.  Emamian rejected both offers.  (Bloom Decl. (Dkt. No. 346) ¶¶ 25-26, 69-71)

"On January 17, 2018, jury selection commenced.  The trial lasted seven weeks.

During the course of the trial, Emamian 'agree[d] that the Court should instruct the jury on both

her discrimination and retaliation claims, though also brought under federal and state law, using

only the standard of law pursuant to the [NYCHRL].'  On February 28, 2018, the trial concluded

in a verdict in favor of Emamian on her [race/national origin discrimination] NYCHRL claim in

the amount of $250,000.00 in back pay and $2,000,000.00 in emotional distress damages."

(R&R (Dkt. No. 354) at 9 (citing Jan. 17, 2018 Minute Entry and Feb. 12, 2018 Pltf. Ltr. (Dkt.

No. 169)) (further citations omitted) (first two alterations in original)[3]; see Verdict Sheet (Dkt.

No. 236-2))  Judge Batts[4] subsequently remitted the emotional distress damages award to

$200,000.00 and ordered that if Emamian did not accept the remitted amount, a new trial on

emotional distress damages would take place.  (June 8, 2018 Order (Dkt. No. 238), available at

2018 WL 2849700)

On August 8, 2018, Emamian moved to "[a]djust[] the back-wage portion of the

jury award to include statutory interest pursuant to N.Y. C.P.L.R. § 5004 on Dr. Emamian's

economic damage award" (the "Motion to Amend").  (Dkt. No. 255)  On November 28, 2018,

while the Motion to Amend was still pending, the parties filed a stipulation in which they

"waiv[ed] their right to a second trial on [Emamian's] claims for physical, mental, and/or

---

[3]  The page numbers of documents referenced in this Order correspond to the page numbers
designated by this District's Electronic Case Files ("ECF") system.

[4]  This case was initially assigned to Judge Deborah Batts.  It was reassigned to this Court on
February 26, 2020, following her death.

emotional damages" and agreed that "the result of a second trial on [her] physical, mental, and/or

emotional damages is an award for [her] in the amount of $200,000."  (Dkt. No. 275 at 3-4)

Judge Batts "so ordered" the parties' stipulation on December 11, 2018:

The Court is in receipt of the Parties' Joint Stipulation dated November 28, 2018
in the above-captioned case. (ECF No. 275.)  As explained below, the Parties'
joint request as set forth in their Joint Stipulation is GRANTED.

(Dec. 11, 2018 Order (Dkt. No. 277) at 1)

Judge Batts' December 11, 2018 order concludes by directing "the Clerk of the

Court [to] enter final judgment in the amount of $250,000.00 in backpay . . . .  [and] $200,000.00

for Plaintiff's physical, mental, and/or emotional damages."  (Id. at 3-4)  The order does not

mention Plaintiff's Motion to Amend.

As with all orders issued by judges in this District, Judge Batts' December 11,

2018 order was summarized in a "docket entry" on the docket sheet available on the ECF

system.  "Every docket entry shows, in the left-hand column of the docket sheet, the date that the

document being entered on the docket was filed.  The docket entry then states the general nature

of the document being entered."  Houston v. Greiner, 174 F.3d 287, 288 (2d Cir. 1999).  The

descriptions in docket entries are drafted by docket clerks, who are employed by the Clerk's

Office.  The docket clerks generate the docket entries, typically by copying and pasting the last

paragraph or last few paragraphs of an order.  See generally Houston, 174 F.3d at 289 (noting

that "docket[] clerks" and "the Clerk's Office" are responsible for drafting docket entries'

descriptions of orders).

5

Shown below is a screenshot of the docket entry for Judge Batts' December 11, 2018 order, as it appears on the ECF system:

| 12/11/2018 | 277 | DECISION & ORDER granting 255 Motion to Amend/Correct. The Parties have jointly stipulated that the result of a second trial on Plaintiff's physical, mental, and/or emotional damages is an award for Plaintiff in the amount of $200,000. This Court has the authority to enter final judgment on this jointly stipulated award. See e.g., Thomas v. iStar Fin., Inc., 520 F. Supp 483 (S.D.N.Y. 2007), aff'd per curiam, 629 F.3d 276, 147-48 (2d Cir. 2010) (The District Court entered final judgment on the parties' joint stipulation of a jury award in a new trial. The Second Circuit subsequently exercised appellate jurisdiction over District Court's final judgment). Accordingly, it is hereby: ORDERED that the Clerk of the Court enter final judgment in the amount of $250,000.00 in backpay; it is further ORDERED that the Clerk of the Court enter final judgment in the amount of $200,000.00 for Plaintiffs physical, mental and/or emotional damages. (Signed by Judge Deborah A. Batts on 12/11/2018) (rro) Transmission to Orders and Judgments Clerk for processing. (Entered: 12/11/2018) |

The left-hand column of the docket entry contains the date on which the order was filed – here, December 11, 2018.  The middle column of the docket entry contains a hyperlink which, when clicked, reveals a PDF version of Judge Batts' December 11, 2018 order. The right-hand column of the docket entry contains a description of the December 11, 2018 order.

The parenthetical "(rro)" in the penultimate line of the docket entry refers to the initials of the docket clerk who drafted the docket entry.  See Vargas Torres v. Toledo, 672 F. Supp. 2d 261, 263 (D.P.R. 2009) ("[T]he letters contained by parentheticals following docket text refer to the individual who entered that text, and . . . those initials are always placed in parentheticals at the end of the docket text language.").[5]

Beginning with the second sentence of the docket entry ("The Parties have jointly stipulated. . . ."), the docket clerk copied and pasted from the last three paragraphs of Judge Batts' December 11, 2018 order.  (See Dkt. No. 277 at 3-4)

---

[5]  The language "Signed by Judge Deborah A. Batts" indicates that Judge Batts signed the December 11, 2018 order that is hyperlinked.  That language does not indicate that Judge Batts signed the docket entry.

The first line of the docket entry – "DECISION & ORDER granting 255 Motion to Amend/Correct" – is not taken from Judge Batts' December 11, 2018 order, however.  Indeed, the reference to the Motion to Amend at Dkt. No. 255 is a clerical error, because Judge Batt's December 11, 2018 order does not address or mention the Motion to Amend at Dkt. No. 255 in any fashion.

On December 12, 2018, the Clerk of Court entered judgment, stating "[t]hat for the reasons stated in the Court's Decision [and] Order dated December 11, 2018, the parties' joint request as set forth in their Joint Stipulation is granted; judgment is hereby entered in the amount of $250,000.00 in back pay, and $200,000.00 for Plaintiff's physical, mental, and/or emotional damages."  (Judgment (Dkt. No. 280))

On December 21, 2018, Emamian moved "for an order extending the parties' time to file a Notice of Taxation of Costs as well as a Motion for Attorney Fees and Related Costs." (Dkt. No. 281 at 1)  On December 26, 2018, Emamian moved "for an Order . . . awarding attorneys' fees and costs."  (Dkt. No. 282)  Emamian's December 21 and December 26, 2018 filings do not address pre-judgment interest.

The parties subsequently filed cross-appeals.  The Second Circuit affirmed the judgment and the remittitur.  See Emamian I, 971 F.3d 380; Emamian II, 823 F. App'x 40.

On November 16, 2020, the Chapter 11 trustee for the Liddle Firm's bankruptcy estate[6] and Emamian moved separately for an award of attorneys' fees and costs.  Emamian also sought to amend the judgment to include pre- and post-judgment interest.  (Dkt. Nos. 296, 300)

---

[6]  The Liddle Firm filed a Chapter 11 bankruptcy petition on July 22, 2019.  In re Liddle & Robinson, L.L.P., Case No. 19-12346 (SHL) (Bankr. S.D.N.Y.).

In a September 30, 2021 order, this Court denied the motions without prejudice, and directed that a consolidated motion be filed solely on behalf of Emamian.  (Dkt. No. 330)

Emamian filed the instant motion for an award of attorneys' fees and costs and pre- and post-judgment interest on October 29, 2021.  (Dkt. No. 342)  On December 17, 2021, this Court referred the instant motion to Judge Aaron for an R&R.  (Dkt. No. 350)  On February 9, 2022, Judge Aaron issued an R&R recommending that the motion be granted in part and denied in part.  (Dkt. No. 354)  Emamian filed objections on March 18, 2022, and the University filed an opposition to the objections on April 29, 2022.  (Dkt. Nos. 361, 364)

## III.   THE R&R'S RECOMMENDATIONS AND PLAINTIFF'S OBJECTIONS

As to pre-judgment interest, the R&R recommends that "Plaintiff . . . be awarded post-verdict, pre-judgment interest on the principal sum of $250,000.00" – representing the jury's damages award for backpay – "at the New York statutory rate of 9% per annum from February 28, 2018 to December 12, 2018, in the amount of $17,691.77."  (R&R (Dkt. No. 354) at 50)  The R&R recommends denying Plaintiff's motion for pre-judgment interest in all other respects.  (Id. at 20-21)

As to attorneys' fees and costs, the R&R recommends that "Plaintiff . . . be awarded attorneys' fees in the amount of $960,570.00 (i.e., $354,720.00 attributable to [the Liddle Firm]; $199,500.00 attributable to [the Alterman Firm] and the Dowd Firm; and $406,350.00 attributable to [the Beldock Firm and attorney Joshua Moskovitz]), and costs in the amount of $134,855.66 (i.e., $60,763.09 attributable to [the Liddle Firm]; $49,969.83 attributable to [the Alterman Firm] and the Dowd Firm; $5,512.74 attributable to [the Beldock Firm]; and $18,610.00 attributable to Plaintiff herself)."  Judge Aaron further recommends that Plaintiff

receive no award for attorneys' fees and costs incurred after January 3, 2018, the date of the second offer of judgment.  (Id. at 49-50)

The R&R further recommends that Plaintiff "be awarded post-judgment interest pursuant to 28 U.S.C. § 1961(a), on the total amount of the judgment, i.e., $467,691.77 ($250,000.00 in backpay, $200,000.00 in emotional distress damages and $17,691.77 in post-verdict pre-judgment interest)" and on any award of attorneys' fees and costs, but that post-judgment interest on attorneys' fees and costs not begin to run until the entry of an amended judgment.  (Id. at 21, 50-51 & n.43)

Plaintiff objects to the R&R's recommendations regarding (1) denial of pre-judgment interest, except as to post-verdict, pre-judgment interest on her backpay award; (2) attorney billing rates and hours; (3) costs incurred by Plaintiff; (4) the effect of the second offer of judgment on Plaintiff's ability to recoup attorneys' fees and costs incurred after that date; and (5) the date on which post-judgment interest on any award of attorneys' fees and costs should begin to run.  (Pltf. Objs. (Dkt. No. 361))

## DISCUSSION

## I.    LEGAL STANDARDS

### A.    Review of a Magistrate Judge's Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  "'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'" Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241 (RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v. TD Waterhouse Inv. Servs., Inc., 280 F. Supp.

2d 208, 212 (S.D.N.Y. 2003)).  A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed."  United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

Where a timely objection has been made to a magistrate judge's recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C). However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'"  Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (second alteration in original) (quoting Vega v. Artuz, 97 Civ. 3775 (LTS)(JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)).  "To the extent . . . that the party . . . simply reiterates the original arguments, [courts will review the Report strictly for clear error."  IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 07 Civ. 6865 (LTS)(GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing Pearson-Fraser v. Bell Atl., No. 01 Civ. 2343 (WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003) and Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)); see also Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, . . . rehashing . . . the same arguments set forth in the original petition." (quotation marks and citations omitted)).

Moreover, a party cannot invoke de novo review by citing new facts or making new arguments that the party could have raised in the briefing before the magistrate judge but did

not.  See Bolling v. City of New York, No. 18CIV5406PGGRWL, 2021 WL 961758, at *6

(S.D.N.Y. Mar. 15, 2021) ("[D]istrict courts 'will ordinarily refuse to consider evidentiary

material that could have been, but was not, presented to the magistrate judge in the first

instance.'") (quoting Brown v. Martuscello, No. 16-CV-6084 (CS)(PED), 2019 WL 3491461, at

*2 (S.D.N.Y. Aug. 1, 2019)); United States v. Gladden, 394 F. Supp. 3d 465, 480 (S.D.N.Y.

2019) (declining to consider a "'new argument[] raised in objections to a magistrate judge's

report and recommendation that could have been raised before the magistrate but [was] not.'")

(quoting Hubbard v. Kelley, 752 F. Supp. 2d 311, 313 (W.D.N.Y. 2009)).

**B.      Motion to Correct or Amend a Judgment**

Pursuant to Federal Rule of Civil Procedure 59(e), "[a] motion to alter or amend a

judgment must be filed no later than 28 days after the entry of the judgment."  However,

pursuant to Federal Rule of Civil Procedure 60(a), "[t]he court may correct a clerical mistake or

a mistake arising from oversight or omission whenever one is found in a judgment, order, or

other part of the record."

"[T]he distinction between an error that may be clarified under Rule 60(a) and

one that must be 'reconsidered' under Rule 59 and Local Civil Rule 6.3 is that 'a correction

under Rule 60(a) cannot alter the substantive rights of the parties, but rather may only correct the

record to reflect the adjudication that was actually made.'"  Eaton Partners, LLC v. Azimuth

Cap. Mgmt. IV, Ltd., No. 18 CIV. 11112 (ER), 2021 WL 4392478, at *4 (S.D.N.Y. Sept. 23,

2021) (quoting C.F.P.B. v. Sprint Corp., 320 F.R.D. 358, 363 (S.D.N.Y. 2017)).  "The law in this

Circuit is clear that '[t]o be correctable under Rule 60(a), the absence of an award of pre-decision

interest in a judgment must fail to reflect the actual intention of the court. . . . An error in a

judgment that accurately reflects the decision of the court or jury as rendered is not "clerical"

within the terms of Rule 60(a).'"  Bazzano v. L'Oréal S.A., No. 93 CIV. 7121 (SHS), 1997 WL

66781, at *1 (S.D.N.Y. Feb. 14, 1997) (quoting Paddington Partners v. Bouchard, 34 F.3d 1132, 1140 (2d Cir. 1994)) (alterations in Bazzano; footnote omitted).

### C.   Pre- and Post-Judgment Interest

Under New York law, pre-judgment "[i]nterest to [a] verdict, report, or decision . . . shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property. . . ."  CPLR § 5001(a).  "Interest shall be recovered upon the total sum awarded, including interest to verdict, report or decision, in any action, from the date the verdict was rendered, or the report or decision was made to the date of entry of final judgment."  CPLR § 5002.  "Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute."  CPLR § 5004(a).

28 U.S.C. § 1961(a) provides that post-judgment "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."

### D.   Attorneys' Fee Awards

The NYCHRL provides that, "[i]n any civil action commenced pursuant to this section, the court, in its discretion, may award the prevailing party costs and reasonable attorney's fees."  N.Y.C. Admin. Code § 8-502(g).  "Like the NYCHRL generally, the fees provision is to 'be construed liberally . . . in order to accomplish the statute's uniquely broad and remedial purpose.'"  Siracuse v. Program for the Dev. of Human Potential, No. 07 CV 2205 CLP, 2012 WL 1624291, at *16 (E.D.N.Y. Apr. 30, 2012) (quoting Williams v. N.Y.C. Housing Auth., 872 N.Y.S.2d 27 (1st Dept. 2009) (quoting N.Y.C. Admin. Code § 8–130)).

"'[T]he evaluation of reasonable attorneys' fees and the cutting of fees . . . lie within the sound discretion of the court[.]'" Marchuk v. Faruqi & Faruqi LLP, 104 F. Supp. 3d 363, 366 (S.D.N.Y. 2015) (citing Shannon v. Fireman's Fund Ins. Co., 156 F. Supp. 2d 279, 298 (S.D.N.Y. 2001)).  In exercising its discretion, a court must "bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant," including "the complexity and difficulty of the case, . . . the resources required to prosecute the case effectively . . . , the timing demands of the case, . . . and other returns (such as reputation, etc.) that an attorney might expect from the representation." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 184, 190 (2007) (emphasis in original) (citing the factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)).  Courts should also consider "[t]he reasonable hourly rate . . . a paying client would be willing to pay[,]" "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.

"In exercising its discretion [to award attorneys' fees], 'the district court is not obligated to undertake a line-by-line review of [the prevailing party's] extensive fee application.' . . . Rather, it may 'use a percentage deduction as a practical means of trimming fat.'" Marchuk, 104 F. Supp. 3d at 367 (quoting Marion S. Mishkin Law Office v. Lopalo, 767 F.3d 144, 150 (2d Cir. 2014); McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006)); see also Kriesler v. Second Ave. Diner Corp., No. 10 Civ. 7592 RJS, 2013 WL 3965247, at *4 (S.D.N.Y. July 31, 2013) ("In calculating a reduction, a court need not take a strict proportionality approach."  (citing Rivera v. Dyett, No. 88 Civ. 4707(PKL), 1993 WL 36159, at *4 (S.D.N.Y. Feb. 10, 1993))).

### E.    Rule 68 Offer of Judgment

Rule 68 of the Federal Rules of Civil Procedure governs offers of judgment and

provides as follows:

> (a) Making an Offer; Judgment on an Accepted Offer.  At least 14 days before the
> date set for trial, a party defending against a claim may serve on an opposing
> party an offer to allow judgment on specified terms, with the costs then accrued.
> If, within 14 days after being served, the opposing party serves written notice
> accepting the offer, either party may then file the offer and notice of acceptance,
> plus proof of service.  The clerk must then enter judgment.
>
> . . . .
>
> (d) Paying Costs After an Unaccepted Offer.  If the judgment that the offeree finally
> obtains is not more favorable than the unaccepted offer, the offeree must pay the
> costs incurred after the offer was made.

Fed. R. Civ. P. 68(a), (d).

Attorneys' fees in NYCHRL cases are "costs" within the meaning of Rule 68.

See Marchuk, 104 F. Supp. 3d at 368 ("[T]he NYCHRL's attorneys' fee provision is similar to

that of the federal civil rights statutes, which treat costs and fees the same for purposes of Rule

68.") (citing Albunio v. City of New York, 23 N.Y.3d 65, 73 (2014)).

## II.    ANALYSIS

### A.    The R&R's Recommendations as to Pre-Judgment Interest

#### 1.    Pre-Verdict Interest on Plaintiff's Back Pay Award

Emamian moves for "pre-verdict, pre-judgment interest on back pay from July 31,

2007 until the date of the verdict – February 28, 2018."  (Pltf. Br. (Dkt. No. 343) at 13

(capitalization altered))  According to Plaintiff, pre-verdict, pre-judgment interest on back pay is

"mandatory 'as a matter of right'" under CPLR § 5001(b) and "'shall be calculated from the

earliest ascertainable date the cause of action existed'" – here, July 31, 2007, the date the

University terminated Emamian – to "the date of the verdict – February 28, 2018."  (Id. at 14

(quoting Agence Fr. Presse v. Morel, 645 F. App'x 86, 88 (2d Cir. 2016), and CPLR § 5001(b)))

Judge Aaron recommends that Plaintiff's application for pre-verdict, pre-

judgment interest on her back pay award be denied:

> . . . Judge Batts' Order directing the entry of the judgment, i.e., the December 11, 2018 Decision & Order, directed that the Clerk of Court "enter final judgment in the amount of $250,000.00 in backpay" and "enter final judgment in the amount of $200,000.00 for Plaintiff's physical, mental and/or emotional damages."  (Dkt. No. 277 at 2-4)  The Decision & Order makes no mention of pre-judgment interest.  (Id.)  Judge Batts never decided Plaintiff's August 18, 2018 [Motion to Amend] that was filed at Dkt. No. 255, which motion Defendant opposed.[FN16]  Thus, Judge Batts never decided what amount, if any, of pre-judgment interest to award to Plaintiff.
>
> [FN16]Plaintiff argues that Judge Batts granted the [Motion to Amend] based upon the text of the docket entry on the Court's ECF system that was entered when the December 11, 2018 Decision & Order was filed.  (See Pltf. Reply Br. at 7)  Before setting forth the text of the December 11, 2018 Decision and Order, the text of the docket entry reads "DECISION & ORDER granting 255 Motion to Amend/Correct."  (Docket Text for Dkt. No. 277)  This docket entry was made by a docket clerk, not by Judge Batts.  From the face of Judge Batts' Decision and Order, it is clear that she did not address, let alone grant, Plaintiff's motion for pre-judgment interest.  The clerical error that was made by the docket clerk was in connecting the December 11, 2018 Decision and Order to [the Motion to Amend filed at] Dkt. No. 255, as opposed to Dkt. No. 275 (which was the parties' proposed Stipulation and Order regarding emotional distress damages).  However, there was no error in the Judgment itself.
>
> On December 12, 2018, the Clerk of Court entered judgment in accordance with the December 11, 2018 Decision & Order.  (Jgmt. (Dkt. No. 280))  No mistake was made by the Clerk of Court regarding the Judgment.  Since the "Judgment accurately reflected the court's decision as revealed in its order[] directing the entry of judgment, the Judgment's failure to award prejudgment interest cannot be termed a mere clerical error" under Rule 60(a).  See In re Frigitemp Corp., 781 F.2d 324, 328 (2d Cir. 1986).  Thus, regardless of whether the award of pre-judgment interest was discretionary or mandatory, Plaintiff was required under Rule 59(e) to file her motion to amend the Judgment within 28 days of the Judgment being entered, which she failed to do.  See Stanford Square, L.L.C. v. Nomura Asset Cap. Corp., 232 F. Supp. 2d 289, 291 (S.D.N.Y. 2002) ("a party's ability to amend an order to include prejudgment interest lapses once a motion to alter or amend a judgment, pursuant to FRCP 59(e), is no longer timely").  Thus, under controlling precedent, Plaintiff's motion for [pre-verdict,] pre-judgment interest [on back pay] should be denied. . . .

(R&R (Dkt. No. 354) at 19-20 (citations altered; further footnote omitted))

    In her objections, Plaintiff contends that the docket entry's description of Judge Batts' December 11, 2018 order does not mischaracterize that order as "granting [the Motion to Amend]."  According to Plaintiff, the grant of the Motion to Amend is a separate "ruling [that] is reflected only on the docket sheet" and not in the text of the December 11, 2018 order.  (Pltf. Objs. (Dkt. No. 361) at 10)

    Plaintiff further argues that "a fair reading" of the December 11, 2018 order is that – by "direct[ing] the Clerk to enter final judgment" – Judge Batts implicitly granted the Motion to Amend, which was pending at the time.  (Id. at 11)

    Plaintiff also contends that she "preserved [her] right" to move to amend the judgment under Rule 59(c) by "filing [the Motion to Amend] on August 8, 2018 (Dkt. No. 255), well before the Judgment was entered, and filing for a motion to extend time to file a 'Notice of Taxation of Costs as well as Attorneys' Fees and Related Costs,' and again filing a motion [for] a bill of costs, for fees, other costs, and 'other relief as the Court deem(s) fit' on December 26, 2018.  (Dkt. Nos. 281, 282)."  (Id. at 11-12)

    Plaintiff further asserts that "the prevailing party need not even make an application for interest to be awarded if damages are found," and that "[h]ere, where Plaintiff clearly made her application known after the verdict was rendered, and where the Court granted the motion, the district court should find that pre-judgment interested is mandated by the interests of justice on the record before it."  (Id. at 12)

    In the alternative, Plaintiff argues that "the Court may find that Judge Batts never ruled on the motion and that the motion is still pending," and therefore this Court may grant the Motion to Amend now.  (Id.)

Finally, Plaintiff argues that because "pre-judgment interest is mandatory for NYCHRL backpay claims," the Court should construe a denial of such interest as a clerical error and grant Plaintiff's motion as a Rule 60(a) motion to correct a clerical mistake in a judgment. (Id. at 13-15)

### a.   Standard of Review

In arguing that Judge Batts actually granted the Motion to Amend, Plaintiff repeats arguments she made before Judge Aaron.  (Pltf. Reply Br. (Dkt. No. 349) at 7 ("The Court granted Plaintiff's request for pre-judgment interest") (citing Dkt. Nos. 255, 277); R&R (Dkt. No. 354) at 19 n.16 (rejecting "Plaintiff['s] argu[ment] that Judge Batts granted the [Motion to Amend]"))  Accordingly, this objection does not invoke de novo review.  See Phillips, 955 F. Supp. 2d at 211.

Plaintiff's interest of justice argument, and her claim that this Court can construe the Motion to Amend as still pending and rule on it now, are new arguments improperly raised for the first time in objections to the R&R, and thus do not invoke de novo review.  See Gladden, 394 F. Supp. 3d at 480.

However, Plaintiff's argument that she preserved her right to move to amend under Rule 59(c), and that her instant motion should be construed as having been brought under Rule 60(a), arguably invoke de novo review, as Judge Aaron ruled on these issues, even though they had not been briefed by the parties.

Accordingly, Judge Aaron's determination that Judge Batts did not grant Plaintiff's Motion to Amend will be reviewed only for clear error, while his findings concerning Plaintiff's motion to amend the judgment under Rule 59 or under Rule 60 will be reviewed de novo.

### b.   <u>Analysis</u>

This District's ECF Rules and Instructions provide that

> [a]ll [ECF] users have an obligation to review the Court's actual order, decree, or judgment, as available on ECF, and should not rely on the description of such order, decree or judgment in the Notice of Electronic Filing . . . [containing the docket entry] alone.  In the case of any discrepancy between an order, decree, or judgment of the Court and the description of such order, decree, or judgment in the [Notice of Electronic Filing containing the docket entry], the order, decree, or judgment of the Court shall control.

S.D.N.Y. ECF Rules and Instructions, R. 4.3.

Accordingly, where there is a discrepancy between the text of an order and a docket entry concerning that order, courts treat the text of the order as controlling.  <u>See</u> <u>Abu-Rub</u> <u>v. Jordanian Airlines, Inc.</u>, No. 07CIV.7888JGKKNF, 2009 WL 3152561, at *2-3, *6 (S.D.N.Y. Sept. 28, 2009) (plaintiffs did not read court order requiring a supplemental submission providing "additional information" concerning "19 items"; plaintiffs instead submitted only the "responses . . . [that they] thought necessary based on a reading of the docket [entry's] text" describing the order, which "provide[d] [only a partial summary" of the court's order and did not reference all nineteen items; the court denied plaintiffs' request to "cure," stating that "[t]he plaintiffs' failure to obtain and read a full copy of an order issued by the Court, before preparing a submission in response to that order, [was] a reckless way to represent the interests of . . . client[s] in a litigated matter"); <u>In re Westgate Nursing Homes, Inc.</u>, 518 B.R. 250, 254-55 (Bankr. W.D.N.Y. 2014) ("Bearing in mind the narrow scope of [Rule 60(a)], the Court vacates the Final Decree, but only for the limited purpose of correcting the docket text associated with ECF No. 250.  Entry of a 'final decree' closing the case under [Fed. R. Bankr. P.] 3022[, the rule regarding closing cases when 'an estate is fully administered,'] was a clerical error [in the text of the docket entry] because the Debtor's bankruptcy estate was never 'fully administered.'  Rather, the case was dismissed under § 1112(b) of the Bankruptcy Code."); <u>Francois v. Warden of</u>

Sullivan Corr. Facility, No. 12-CV-5333 RRM, 2014 WL 1153920, at *3 n.3 (E.D.N.Y. Mar. 19, 2014) ("The docket text accompanying the Court's earlier Order mistakenly says that the Order denied petitioner's motion to proceed in forma pauperis.  The Court's earlier Order denied petitioner's request for appointment of counsel, not his request for in forma pauperis status."); Yoon v. Jamaica French Cleaners, Inc., No. 12-CV-3845 RLM, 2014 WL 4199723, at *1 n.2 (E.D.N.Y. Aug. 22, 2014) ("The Court, in its 9/26/13 Order, directed Ms. Lee to arrange for Korean translations of the order to be served on defendants.  Defense counsel mistakenly translated only the docket text associated with the 9/26/13 Order, which contained most but not all of the substance of the order itself.").

   Here, Judge Batts does not mention Plaintiff's then-pending Motion to Amend in her December 11, 2018 order. Her December 11, 2018 order instead grants "the Parties' joint request as set forth in their Joint Stipulation" of November 28, 2018.  (Dec. 11, 2018 Order (Dkt. No. 277) at 1)  The November 28, 2018 stipulation, in turn, does not mention the Motion to Amend or pre-judgment interest.  In sum, nothing in the December 11, 2018 order suggests that Judge Batts is granting the Motion to Amend.  Accordingly, the docket entry's statement that Judge Batts' December 11, 2018 order grants the Motion to Amend is an obvious clerical error. The text of the December 11, 2018 order controls, and the text of the order plainly does not grant the Motion to Amend.  See S.D.N.Y. ECF Rules and Instructions, R. 4.3.

   Plaintiff's argument that the docket entry constitutes a separate court order granting the Motion to Amend is incorrect.  The descriptive text in a docket entry is not an order in and of itself, but rather, as explained above, a summary of the hyperlinked order, included for the convenience of those reviewing the docket sheet.  Where a docket entry diverges from the text of an order, the docket clerk has made a clerical error, and the text of the judge's order

19

controls.  As discussed above, in this District, docket clerks, and not judges, draft docket entries, and the hyperlinked judge's order is what controls – not the docket clerk's description of that order.

In sum, this Court finds no error in Judge Aaron's determination that Judge Batts did not grant Plaintiff's Motion to Amend in her December 11, 2018 order, and will adopt that finding.

In determining that Plaintiff's motion for pre-verdict, pre-judgment interest should be construed as a motion to amend judgment under Rule 59, rather than a motion to correct a clerical mistake under Rule 60, Judge Aaron relies on In re Frigitemp Corp., 781 F.2d 324 (2d Cir. 1986).  (See R&R (Dkt. No. 354) at 20)  In Frigitemp, the Second Circuit held that when a "[j]udgment accurately reflected the court's decision as revealed in its orders directing the entry of judgment, the [j]udgment's failure to award pre-judgment interest [could not] be termed a mere clerical error" within the meaning of Rule 60(a).  Frigitemp, 781 F.2d at 328. Frigitemp follows Lee v. Joseph E. Seagram & Sons, Inc., 592 F.2d 39 (2d Cir. 1979), in which the Second Circuit ruled that where a plaintiff is entitled to pre-judgment interest under CPLR §§ 5001(b) and (c) but the judgment contains no such award, the "remedy in such a situation" is to file a motion to amend the judgment within the timeframe prescribed by Rule 59(e).  Lee, 592 F.2d at 42.  "[W]here the failure of the judgment to include pre-judgment interest to which a plaintiff is entitled is not due to clerical inadvertence, Rule 60(a), which has [n]o time limitation, is not the appropriate vehicle for relief."  Id.

Here, the judgment awarded Plaintiff "$250,000.00 in backpay, and $200,000.00 for Plaintiff's physical, mental, and/or emotional damages . . . [f]or the reasons stated in the Court's Decision [and] Order dated December 11, 2018 [and in] the parties' joint request as set

forth in their Joint Stipulation." (Judgment (Dkt. No. 280))  The order and stipulation cited in

the judgment do not mention pre-judgment interest (Dkt. Nos. 275, 277), and under the case law

discussed above, the judgment's failure to address pre-judgment interest cannot be regarded as a

clerical error.

   For these reasons, Judge Aaron correctly concludes that Rule 60(a) – which

addresses the "correct[ion] [of] a clerical mistake" in a judgment – does not apply here.  Instead,

Frigitemp and Lee required Plaintiff to seek an award of pre-verdict, pre-judgment interest via a

Rule 59(c) motion for pre-judgment interest.  The time limit for such a motion is "28 days after

the entry of the judgment," Fed. R. Civ. P. 59(e), but Plaintiff did not file such a motion within

that timeframe.  Accordingly, Plaintiff's motion for pre-verdict, pre-judgment interest is time-

barred.

   In her objections, however, Plaintiff contends that she "preserved [her] right [to

file a Rule 59 motion] by filing her motion to amend the Judgment on August 8, 2018 (Dkt. No.

255), well before the judgment was entered."  (Pltf. Objs. (Dkt. No. 361) at 11)  This is

nonsense.  A motion cannot "preserve" an objection to a court order or judgment that has not yet

been issued.  Cf. Riverkeeper, Inc. v. U.S. E.P.A., 475 F.3d 83, 130 (2d Cir. 2007) (party

challenging agency's rule "purported to 'preserve' the right to raise new challenges to [any

revised] Rule if [the Second Circuit] remanded[ed] significant aspects of [the current rule] to the

[agency]"; "preservation" was irrelevant, however, because any such challenge would not be a

challenge to an existing rule, but rather a "new petition for review" of a revised rule), rev'd and

remanded on other grounds sub nom. Entergy Corp. v. Riverkeeper, Inc., 556 U.S. 208 (2009).

   Plaintiff also argues that her December 21 and December 26, 2018 motions for an

extension of time and for an award of attorneys' fees and costs, respectively, preserved her right

to move to amend the judgment to include pre-verdict, pre-judgment interest, because these filings reflect Plaintiff's request for "other relief as the Court deem[s] fit."  (Pltf. Objs. (Dkt. No. 361) at 11-12 (citing Dkt. No. 282 at 1) (alteration in Plaintiff's Objections))  This boilerplate language cannot be read as a request for an award of pre-verdict, pre-judgment interest.

Plaintiff also argues that the judgment "'fail[s] to reflect the actual intention of the court,'" because "pre-judgment interest is mandatory for NYCHRL backpay claims" under CPLR 5001, and therefore Plaintiff's motion should be construed as one to correct a clerical mistake under Rule 60(a).  (Id. at 13 (quoting Frigitemp, 781 F.2d at 327)).  This argument is foreclosed by Lee, however, which holds that Rule 59, and not Rule 60, governs where a plaintiff is "entitled to pre-judgment interest from some date [under] [CPLR §§]5001(b), (c)."  In so holding, the court noted that "it was the failure of plaintiffs to bring this statutory entitlement to the attention of the court until almost two years after the entry of the judgment that created the problem, not any clerical oversight or error."  Lee, 592 F.2d at 41; see also id. at 44 ("In the circumstances here the judgment initially entered accurately reflected the verdict of the jury, and in the absence of clerical error Rule 60(a) is not properly utilized to correct the omission of an award of pre-judgment interest pursuant to [CPLR §] 5001.").  That is the precise situation here, and Lee is dispositive on this point, regardless of how strong Plaintiff's motion for pre-verdict, pre-judgment interest would have been if timely filed under Rule 59(c).

In sum, Judge Aaron correctly determined that Rule 59, and not Rule 60, governs, and that Plaintiff's motion for pre-verdict, pre-judgment interest is untimely.[7]  This Court will adopt his recommendation that Plaintiff's motion for pre-verdict interest on back pay be denied.

---

[7]  While Plaintiff contends that the interests of justice require that this Court consider her motion for pre-judgment interest, the Second Circuit rejected this argument in Frigitemp.  See 781 F.2d

2.     __Post-Verdict, Pre-Judgment Interest on Back Pay Award__

Plaintiff moves for "post-verdict, pre-judgment [interest] at nine percent under New York statutory law on the total sum awarded from the 'date the verdict was rendered' to 'the date of entry of final judgment.'"  (Pltf. Br. (Dkt. No. 343) at 15 (quoting CPLR §§ 5002, 5004))

Citing Lee and CPLR § 5002, Judge Aaron concludes that "the failure to award the post-verdict portion of pre-judgment interest under New York law is a clerical error that can be addressed under Rule 60(a)."  (R&R (Dkt. No. 354) at 20 (citing Lee, 592 F.2d at 41-42; and CPLR 5002))  The R&R goes on to recommend that "Plaintiff . . . be awarded [post-verdict,] pre-judgment interest on the principal sum of $250,000.00" – the amount the jury awarded for back pay – "at the New York statutory rate of 9% per annum, from February 28, 2018 to

---

at 328 ("Nor are we persuaded by [plaintiff's] argument that the equities here favor disregard of the policies of finality and repose. . . . Defendants may well have expected to pay such interest, but in fact there was no order or judgment requiring them to do so.  Had [plaintiff] simply taken care to determine whether all of the relief he requested, if not expressly denied, had in fact been granted by the court, he could have moved to alter the judgment within the time periods provided by Rule 59(e) or Rule 60(b).").  The cases Plaintiff cites in support of her argument (Pltf. Objs. (Dkt. No. 361) at 12) are not on point.  See Newburger, Loeb & Co. v. Gross, 611 F.2d 423, 433 (2d Cir. 1979) (district court did not abuse its discretion by granting pre-judgment interest sua sponte where defendants "ha[d] been found to have used the threat of prolonged litigation in order to effect a breach of fiduciary duty"; pre-judgment interest was necessary "[t]o avoid allowing the defendants to reap the rewards of their wrongdoing" in connection with the litigation); Thieriot v. Jaspan Schlesinger Hoffman, LLP, No. 07CV5315DRHAKT, 2016 WL 6088302, at *4 (E.D.N.Y. Oct. 18, 2016) (discussing parties' right to amend pretrial disclosures).

As to Plaintiff's argument that her Motion to Amend is still pending, because Judge Batts never ruled on her request, the fact remains that a judgment was entered in this case, and that judgment does not award pre-judgment interest.  Even if this Court could view the Motion to Amend as still pending, there would be no way to grant that motion without, in effect, altering or amending the judgment entered on December 12, 2018.  As explained above, the only vehicle for such a motion with respect to pre-verdict, pre-judgment interest is Rule 59, which has a strict time limit that Plaintiff did not meet.

December 12, 2018, which results in pre-judgment interest in the amount of $17,691.77." (Id. at

21 (citation omitted))

No party has objected to this recommendation. Accordingly, this Court reviews it

for clear error. See Gilmore, 2011 WL 611826, at *1.

Judge Aaron relies on Lee and CPLR § 5002 in concluding that a judgment

omitting post-verdict, pre-judgment interest is a clerical error that can be addressed at any time

under Rule 60(a). In Lee, the Second Circuit found that

> [t]he only portion of the pre-judgment interest awarded below which we believe
> properly falls within the Rule 60(a) meaning of "clerical error" is the $489 of the
> $88,235 total which accrued between the rendering of the jury verdict on June 25,
> 1975 and entry of judgment on June 30, 1975. N.Y.C.P.L.R. § 5002 controls the
> award of "post-verdict" interest. That statute requires the clerk of the court to add
> to a judgment in any action interest from the date of the verdict to entry of
> judgment. Thus, appellees not only had a right to such interest, but the amount
> was to be computed on the plaintiffs' award and added to the judgment
> automatically by the court clerk. In our view, the failure of the clerk to make this
> automatically mandated addition of a mechanically ascertainable amount of
> interest was a mere ministerial oversight remediable as a clerical error under Rule
> 60(a).

Lee, 592 F.2d at 41-42.

CPLR § 5002 provides that

> [i]nterest shall be recovered upon the total sum awarded, including interest to
> verdict, report, or decision, in any action, from the date the verdict was rendered
> or the report or decision was made to the date of entry of final judgment. The
> amount of interest shall be computed by the clerk of the court and included in the
> judgment.

Id.

Lee and CPLR § 5002 confirm Judge Aaron's conclusion that post-verdict, pre-

judgment interest may be awarded here as a correction of a clerical mistake in the judgment.

Accordingly, this Court will adopt Judge Aaron's recommendation that Plaintiff be awarded

post-verdict, pre-judgment interest on the jury's back pay award.

**3.    Post-Verdict, Pre-Judgment Interest
on Emotional Damages Award**

Noting "that Plaintiff does not appear to be seeking pre-judgment interest on the emotional distress portion of the verdict," Judge Aaron concludes that "[p]ost-verdict, pre-judgment interest on the emotional distress portion of the verdict is inappropriate given that the amount of emotional distress damages awarded by the jury was reduced and the amount of such damages ultimately awarded was not finally set until the Judgment was entered."  (R&R (Dkt. No. 354) at 21 n.18)

In her objections, Plaintiff asserts that "the R&R . . . erroneously concludes [that] no such request [for post-verdict, pre-judgment interest on the emotional damages award] was made."  Plaintiff further contends that "[t]he relevant statute, CPLR § 5002, states that the Clerk must add interest at 9 percent on the total sum awarded, which would include all damages."  (Pltf. Objs. (Dkt. No. 361) at 15)

Judge Aaron appears to have overlooked Plaintiff's request for "[p]ost-verdict, pre-judgment interest . . . on Plaintiff's . . . emotional distress damages."  (See Pltf. Br. (Dkt. No. 343) at 15)  Accordingly, this Court reviews this recommendation de novo.

CPLR § 5002 does not distinguish among different categories of damages, but simply provides that "[i]nterest shall be recovered upon the total sum awarded, including interest to verdict, report or decision, in any action, from the date the verdict was rendered or the report or decision was made to the date of entry of final judgment."  Lee – which interprets CPLR § 5002 – likewise does not distinguish among different types of damages in holding that a judgment that omits post-verdict, pre-judgment interest "properly falls within the Rule 60(a) meaning of 'clerical error.'"  Lee, 592 F.2d at 41.

Consistent with the plain text of CPLR § 5002, New York state courts as well as courts in this Circuit applying New York law have awarded post-verdict, pre-judgment interest on awards for emotional distress.  See, e.g., Bermeo v. Atakent, 241 A.D.2d 235, 240, 247 (1st Dept. 1998) (ordering that "interest [be] awarded as of the date of the verdict, and applied to the total sum awarded [under] CPLR § 5002," including for past and future "mental and emotional traumas") (citation omitted); Wachs v. Winter, 569 F. Supp. 1438, 1449, 1451 (E.D.N.Y. 1983) (stating that "[post-verdict] interest is mandatory" with respect to damages for "mental pain and suffering" in a libel case); Torres v. State, 47 Misc. 3d 1220(A), 18 N.Y.S.3d 581 (N.Y. Ct. Cl. 2015) (awarding post-verdict interest on "compensation to Claimant for . . . noneconomic damages" stemming from emotional suffering during wrongful imprisonment), rev'd on other grounds, 149 A.D.3d 1290 (3d Dept. 2017).

As to post-verdict, pre-judgment interest on awards that have been remitted, Koch v. Greenberg, 14 F. Supp. 3d 247 (S.D.N.Y. 2014), aff'd, 626 F. App'x 335 (2d Cir. 2015) is instructive.  In that case, the court remitted a punitive damages award from $12 million to $711,622, but held that "[u]nder the plain language of § 5002, [plaintiff] is . . . entitled to post-verdict, prejudgment interest on his punitive damages award, from the date of [the] verdict . . . until the date the Court enters its final judgment.  The prejudgment interest on [plaintiff's] punitive damages award will accrue on the remitted amount of $711,622, rather than on the full amount of $12,000,000."  Id. at 286.[8]

---

[8]  Defendant argues that Koch is "a breach of contract case governed by CPLR § 5001," and thus "clearly inapposite to [Emamian's] claim for pre-judgment interest on her emotional distress damages award."  (Def. Resp. to Objs. (Dkt. No. 364) at 14 n.6)  But § 5001 and § 5002 are not mutually exclusive; they instead govern the award of interest with respect to different time periods.  Compare CPLR § 5001 ("Interest to verdict, report, or decision") with CPLR § 5002 ("Interest from verdict, report, or decision to judgment").  As discussed above, the Koch court awards post-verdict, pre-judgment interest pursuant to § 5002.  Koch, 14 F. Supp. 3d at 286.

Given the language of CPLR § 5002 and the cases granting post-verdict interest on emotional distress damage awards, this Court sustains Plaintiff's objection to the R&R. Plaintiff will be awarded post-verdict, pre-judgment interest at the rate of 9 percent per annum on the remitted emotional distress damages of $200,000, which amounts to $14,202.74.[9]

### 4.    Post-Verdict, Pre-Judgment Interest on Award of Attorneys' Fees and Costs

Emamian moves for post-verdict, pre-judgment "interest . . . [on any award of] attorneys' fees and costs, as they are part of the 'total sum awarded.'"  (Pltf. Br. (Dkt. No. 343) at 15 (quoting Sayigh v. Pier 59 Studios, L.P., No. 11-CV-1453-RA, 2015 WL 997692, at *13 (S.D.N.Y. Mar. 5, 2015)) (in turn quoting CPLR § 2005))

Judge Aaron recommends that interest on any award of attorneys' fees and costs not begin to run until the entry of an amended judgment including an award of such fees and costs:  "Because attorneys' fees and costs are discretionary under the NYCHRL, and attorneys'

---

[9]  Defendant contends that "post-verdict, prejudgment interest on an emotional distress award is not required by CPLR § 5002," but the cases Defendant cites in support of that argument are not on point.  (See Def. Resp. to Objs. (Dkt. No. 364) at 14)  Kuper v. Empire Blue Cross & Blue Shield, No. 99-CV-1190, 2004 WL 97685 (S.D.N.Y. Jan. 20, 2004) and Reiter v. Metro. Transp. Auth. of New York, No. 01 CIV. 2762 (JGK), 2003 WL 22271223 (S.D.N.Y. Sept. 30, 2003) both involve jury awards for emotional distress damages under federal anti-discrimination statutes.  See Kuper, 2004 WL 97685, at *1 (ADA claim); Reiter, 2003 WL 22271223, at *1 (Title VII claim).  Under these federal statutes, "it is within the trial court's broad discretion to elect whether and how to compute pre-judgment interest."  Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 56 (2d Cir. 1998); see Reiter, 2003 WL 22271223, at *15 ("Under Title VII, it is in a court's discretion to grant prejudgment interest on awards for pain and suffering and emotional distress, but courts have declined to do so when it is unnecessary to make the plaintiff whole.").  And while the plaintiff in Castillo v. Time Warner Cable of New York City, No. 09 CIV. 7644 PAC, 2013 WL 1759558 (S.D.N.Y. Apr. 24, 2013), "prevailed only on his NYCHRL hostile work environment claim," id. at *1, the court erroneously relied on a Title VII case in holding that "'[a]wards of prejudgment interest on emotional distress damages [are] not the norm for New York federal courts, and, instead, are only granted when necessary to make the plaintiff whole.'"  Id. at *6 (quoting DeCurtis v. Upward Bound Int'l, Inc., 2011 WL 4549412 *6 n.4 (S.D.N.Y. 2011)).

fees and costs have yet to be finally determined, post-judgment interest on the fee and cost award should not begin to run until an amended judgment is entered that includes the fee and cost award."  (R&R (Dkt. No. 354) at 51 n.43 (citing N.Y.C. Admin. Code § 8-502(g) and Simmons v. New York City Transit Auth., No. 02-CV-01575 (CPS) (RLM), 2008 WL 3251391, at *3 (E.D.N.Y. July 31, 2008))

       Plaintiff objects to this recommendation, arguing that "[a]s CPLR § 5002 mandates 9 percent interest on the 'total sum awarded' from date of verdict to date of judgment, the R&R should have awarded . . . interest on [attorneys'] fees and costs."  (Pltf. Objs. (Dkt. No. 361) at 17)[10]

       Plaintiff's objection merely rehashes her arguments before Judge Aaron.  (Pltf. Br. (Dkt. No. 343) at 15)  Accordingly, this portion of the R&R will be reviewed only for clear error.  See IndyMac Bank, 2008 WL 4810043, at *1.

       In recommending that interest on any award of attorneys' fees and costs not begin to run until the date of an amended judgment, the R&R relies on Simmons, 2008 WL 3251391.  (R&R (Dkt. No. 354) at 51 n.43)  Simmons provides that – while "[u]nder New York law, plaintiff may receive pre-judgment interest on the award of attorneys' fees" – "[b]ecause [the controlling] statutes leave[] the award of attorney's fees to the discretion of the court, plaintiff's entitlement to attorney's fees [is] established on the date that th[e] Court grant[s] her fee applications."  Id. at *2.  Simmons is fully applicable here, as there has been no decision granting

---

[10]  Plaintiff further complains that "[t]he R&R does not acknowledge Plaintiff's request for [post-verdict, pre-judgment] interest on attorneys' fees and costs."  (Pltf. Objs. (Dkt. No. 361) at 17)  While Judge Aaron does not explicitly address post-verdict, pre-judgment interest on an award of attorneys' fees and costs, his analysis regarding post-judgment interest on an award of attorneys' fees and costs (see R&R (Dkt. No. 354) at 51 n.43) applies to both time periods.  Accordingly, this Court construes his recommendation as addressing both requests.

Plaintiff an award of attorneys' fees and costs.  As in <u>Simmons</u>, attorneys' fees and costs were not part of "the total sum awarded" as of "the date the verdict was rendered."  CPLR § 5002.

This Court agrees with Judge Aaron and concludes that Plaintiff has no right to post-verdict, pre-judgment interest on any award of attorneys' fees and costs.

**B.**     **<u>The R&R's Recommendations as to an Award of Attorneys' Fees and Costs</u>**

      **1.**     **<u>Application of Historic Rates</u>**

In determining the reasonable billing rates for the attorneys and paralegals who represented Emamian, Judge Aaron considers the "historic" rates – that is, the rates prevailing in the market at the time the legal work was performed.  (R&R (Dkt. No. 354) at 26-28, 32-34, 40-41 (analyzing rates "during the time period in question"))  For many of the attorneys and paralegals who represented Emamian over the past sixteen years, this approach results in a reduction in Plaintiff's requested hourly rates.  (<u>Id.</u>)

In her objections, Plaintiff contends that "[c]urrent, not historical, hourly rates are appropriate, especially in a multi-year litigation," because "'compensation received several years after the services were rendered – as it frequently is in complex civil rights litigation – is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed.'"  (Pltf. Objs. (Dkt. No. 361) at 18-19 (quoting <u>Lochren v. Cty. of Suffolk</u>, 344 F. App'x 706 (2d Cir. 2009))  In support of this argument, Plaintiff cites <u>LeBlanc-Sternberg v. Fletcher</u>, 143 F.3d 748, 764 (2d Cir. 1998), where the district court was "instruct[ed] . . . on remand to apply 'current rates, rather than historical rates' in [a] seven-year litigation."  (<u>Id.</u> at 19)

Because Judge Aaron does not discuss the legal standard for determining whether historic or current billing rates should be utilized, the Court reviews this portion of the R&R <u>de novo</u>.

As this Court previously observed in connection with a Section 1983 case,

> courts in this Circuit now generally apply current rates in awarding attorneys' fees in cases such as this, recognizing that "in order to provide adequate compensation where the services were performed many years before the award is made, the rates used by the court to calculate the [presumptively reasonable fee] should be 'current rather than historic hourly rates.'" Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (citing Missouri v. Jenkins by Agyei, 491 U.S. 274, 283-84 (1989)) ("compensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings"); LeBlanc-Sternberg, 143 F.3d at 764 (instructing district court on remand to apply "current rates, rather than historical rates" in order to "compensate for the delay in payment" in multi-year litigation).

Tatum v. City of New York, No. 06-CV-4290 PGG GWG, 2010 WL 334975, at *4 n.4 (S.D.N.Y. Jan. 28, 2010).

However, "[the] use of current rather than historic rates is subject to the Court's discretion – and historic rates may be applied where compensation for delay is unnecessary or Plaintiff bears some fault for the delay." Id. (citing Gierlinger, 160 F.3d at 882). In Gierlinger, for example, the Second Circuit stated that "[t]he court is not necessarily required . . . to award attorneys' fees based on current hourly rates when the delay is due in whole or in substantial part to the fault of the party seeking fees. Though it would be harsh to deny counsel some allowance for the time value of attorneys' fees delayed by considerations of judicial administration, there is no inequity in requiring counsel to bear the cost of delay caused by him or by his client." Gierlinger, 160 F.3d at 882 (quotation and citations omitted).

Accordingly, courts in this Circuit have applied historic rates, rather than current rates, where a plaintiff's own actions caused the fee application to occur long after the underlying legal work was performed. See New York Ass'n for Retarded Children v. Cuomo, No. 72 CV 356 (RJD), 2019 WL 3288898, at *5 (E.D.N.Y. July 22, 2019) (applying historic rates where plaintiff was largely responsible for a "delay in submitting a fee application for hours

billed over a <u>seven-year</u> period") (emphasis in original); <u>Husain v. Springer</u>, No. 97 CV 2982

NG CLP, 2013 WL 1122718, at *6-7 (E.D.N.Y. Mar. 15, 2013) (applying historic rates because

"plaintiffs' counsel, in requesting more than six adjournments, delayed the submission of his fee

motion papers beyond a reasonable date"), <u>rev'd on other grounds</u>, 579 F. App'x 3 (2d Cir.

2014).

   Here, the record demonstrates that this case suffered from inordinate delays.

Plaintiff has stated that as of "July 29, 2010 . . . [she] was ready to go to trial." (Emamian Decl.

(Dkt. No. 344-13) ¶ 2) On appeal, the Second Circuit noted that, "[a]s of August 31, 2010, the

case was trial-ready." <u>Emamian I</u>, 971 F.3d at 385. Trial did not begin until January 17, 2018,

however, nearly seven and a half years later. (Jan. 17, 2018 Minute Entry) And Plaintiff did not

file the instant application for an award of attorneys' fees and costs until December 14, 2021,

nearly four years after the trial ended. (Dkt. No. 342) Much of the delay over the sixteen years

this case has been pending is attributable to Plaintiff and her lawyers.

   As noted above, four separate law firms have represented Plaintiff in this

litigation. The Liddle Firm represented Plaintiff from the filing of this lawsuit on May 18, 2007

until the Liddle Firm's withdrawal 2011. The Alterman and Dowd firms then entered the case,

and remained counsel to Plaintiff until 2016, when they also withdrew. The Beldock Firm filed a

notice of appearance in July 2016, and has represented Plaintiff since that time. <u>Emamian I</u>, 971

F. 3d at 385.

   As the Second Circuit has observed, the "two separate withdrawals of Emamian's

counsel in 2011 and in 2016 delayed further proceedings." <u>Emamian I</u>, 971 F.3d at 385. New

counsel required time to learn the case – which entailed voluminous redundant work. For

example, Dowd states that "[m]uch of [his] time was spent studying the facts of the case to

ensure familiarity with its nuances," and Jonathan Moore of the Beldock Firm states that "[u]pon

entering the case [in 2016], counsel thereafter spent hundreds of hours reviewing the extensive

file." (Dowd Decl. (Dkt. No. 344-6) ¶ 20; Moore Decl. (Dkt. No. 344) ¶ 20)  The Dowd Firm

and the Alterman Firm also spent months trying to obtain the case file from the Liddle Firm;

ultimately, Judge Batts had to intervene.  (Dowd Decl. (Dkt. No. 344-6) ¶ 20 ("It was not until at

least December 2011 [that] we were able to get the file from the prior counsel."); Aug. 1, 2011

Order (Dkt. No. 65) (directing Dowd and Liddle "to meet and confer regarding [the] dispute

[over the file]"); Dec. 2, 2011 Order (directing Liddle "to turn over file upon receipt of check"))

None of this redundant work or the associated delays would have occurred had Plaintiff

maintained the same counsel.[11]

        In addition to the repeated changes in counsel, Plaintiff allowed her case to

languish for long periods.  For example, Plaintiff made no substantive filings between August

31, 2010 – when she filed her trial brief – and February 28, 2013 – when she filed her motions in

limine.  (Dkt. Nos. 49, 75)  Similarly, between April 30, 2013 – when Plaintiff filed replies in

---

[11]  Emamian states that she "did not give [her] consent" to the Liddle Firm withdrawing, and that
she "was not able to participate in the hearing regarding Dowd and Alterman's withdrawal,
despite [her] opposition to their withdrawal."  (Emamian Decl. (Dkt. No. 344-13) ¶¶ 3, 6)  While
Plaintiff opposed the Liddle Firm's motion to withdraw (see Apr. 7, 2011 Order (Dkt. No. 55) at
1 (discussing Plaintiff's letter opposing the withdrawal motion)), Liddle states that his firm's
withdrawal was due to "a breakdown in the attorney-client relationship between [the Liddle
Firm] and Plaintiff over settlement issues."  (Liddle Decl. (Dkt. No. 344-24) ¶ 12)  And at the
April 20, 2016 hearing concerning Alterman and Dowd's withdrawal motions, Dowd said:
"[T]he client has told me she doesn't want me. . . . She doesn't want me because I'm a choice of
Mr. Alterman.  She indicated there's a relationship between me and Mr. Alterman.  She doesn't
know whether any relationship would be with any other lawyer that replaced Mr. Alterman."
(Apr. 20, 2016 Tr. (Dkt. No. 122) at 7)  While Dowd now states in a declaration that, "[a]fter
discovering Dan Alterman's health concerns, [Dowd] concluded that [he] would not be able to
do the trial in the manner [he] wished without counsel who was fully experienced in employment
law" (Dowd Decl. (Dkt. No. 344-6) ¶ 24), this explanation is not credible given what Dowd told
Judge Batts at the April 20, 2016 hearing.

support of her motions in limine (Dkt. Nos. 108-09) – and April 20, 2016 – when Dowd and

Alterman told the Court they would move to withdraw (Dkt. Nos. 116-17, 122), Plaintiff made

no substantive filings.  In sum, many years passed with Plaintiff making no effort to push her

case along.

    Finally, Plaintiff is largely responsible for the protracted nature of the instant

dispute over an award of attorneys' fees and costs.  On November 16, 2020, Plaintiff and the

Liddle Firm's bankruptcy estate moved separately for attorneys' fees and costs.  (Dkt. Nos. 296,

300)  "Plaintiff's current counsel ha[d] advised [Plaintiff] that, due to prior disputes between [the

Liddle Firm] and Plaintiff, [the Liddle Firm] should submit its own motion."  (Liddle Firm Fees

Br. (Dkt. No. 297) at 5)  Plaintiff's current counsel then authorized the Liddle Firm's bankruptcy

estate's trustee to pursue a settlement with the University.  (Jan. 11, 2021 Moore Email (Dkt. No.

327-2) at 3 ("I can't see anything that should stop you from seeing what you can achieve in terms

of settling for Liddle's fees."))  The initial motions for an award of attorneys' fees and costs were

fully briefed as of January 21, 2021.  (Dkt. Nos. 313-16)

    Over the next several months, while the motions were pending, the Liddle Firm's

bankruptcy estate and the University negotiated a settlement, and in a June 28, 2021 letter they

notified the Court that they "ha[d] reached an agreement in principle to settle Liddle's claim for

attorneys' fees and costs."  (Dkt. No. 317)  Another six weeks passed.  Then, on August 9, 2021

– despite Plaintiff's counsel having authorized the settlement negotiations – Plaintiff submitted a

letter objecting to the settlement, and raising for the first time the argument that she "[held] the

right to attorneys' fees and costs, meaning [the] trustee's settlement . . . without Plaintiff's

authority was improper."  (Dkt. No. 318 at 1 (capitalization altered))

On September 21, 2021, Plaintiff filed an "emergency motion to stay the bankruptcy proceeding related to Plaintiff's NYCHRL claim for attorneys' fees and costs" – i.e., she moved to stay a hearing on the Liddle Firm estate's settlement in bankruptcy court.  (Dkt. No. 322)

On September 30, 2021, following briefing on the "emergency motion to stay," this Court denied Emamian's and the Liddle Firm's motions for an award of attorneys' fees and costs without prejudice.  The Court held that the Liddle Firm did not have standing to seek "an award of attorneys' fees and costs, [which] is a right that belongs to plaintiff, and not plaintiff's counsel."  (Sept. 30, 2021 Order (Dkt. No. 330) at 3)  In so holding, the Court noted that Plaintiff "had not addressed why – in directing [the Liddle Firm] to file its own motion for attorneys' fees and costs – she believe[d] [the Liddle Firm] ha[d] standing to submit a separate motion," while in her stay motion she "oppos[ed] the settlement" the Liddle Firm and the University had negotiated.  (Id.)  The instant motion for an award of attorneys' fees and costs – which includes fees and costs incurred by the Liddle Firm – followed.

In sum, Plaintiff's inexplicable decisions to authorize the Liddle Firm's estate to file its own fees motion and pursue its own settlement, only to object months after the motion had been fully briefed and after a settlement had been reached, wasted approximately ten months, and led to duplicative motion practice.

Because Plaintiff and her lawyers are largely responsible for the extensive delays in this case, Judge Aaron correctly found that historic billing rates rather than current bills rates should be utilized in determining a reasonable attorneys' fee award.  Plaintiff's objection on this point is overruled.

2. **Enforcement of the Second Offer of Judgment**[12]

Plaintiff argues that Defendant's second offer of judgment – which Defendant served via FedEx and email on January 3, 2018, and which was for $2 million inclusive of attorneys' fees and costs – was untimely, and therefore cannot limit an attorneys' fee award. (Pltf. Br. (Dkt. No. 343) at 35)  Plaintiff argues that (1) Rule 68's requires that an offer of judgment be served "[a]t least 14 days before the date set for trial"; (2) Rule 6(a)(1)(C) provides that, "when [a] period is stated in days . . . the period continues to run until the end of the next [non-holiday weekday]"; and (3) Rule 6(d) provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) [by] mail . . . 3 days are added after the period would otherwise expire," and that as a result, Defendant would have had to serve the second offer of judgment by December 29, 2017, for the offer to be timely with respect to a trial scheduled to begin on January 17, 2018.  (Id.; see Fed. R. Civ. P. 6, 68) Plaintiff reaches this conclusion by "[c]ounting back 17 days from January 17, 2018" – which brings us to December 31, 2017, a Sunday – and then counting back two more days "to the next weekday . . . December 29, 2017."  (Id.)

Judge Aaron rejects Plaintiff's calculations, finding that "the [s]econd [offer of judgment] was served on January 3, 2018, and jury selection commenced on January 17, 2018. Since the [s]econd [offer of judgment]was served 14 days before the date set for trial, it was timely."  (R&R (Dkt. No. 354) at 49)  In reaching this conclusion, Judge Aaron notes that service of a Rule 68 offer of judgment "is complete the day it is mailed."  (Id. (citing Local Civ. R. 5.3;

---

[12]  Judge Aaron concludes that because Plaintiff's damage awards and reasonable attorneys' fees and costs through August 25, 2011 exceed $850,000, the first offer of judgment has no impact. (R&R (Dkt. No. 354) at 47-48)  No party has objected to that finding, and this Court will not revisit it.

Horton v. City of New York, 636 F. App'x 822, 823 (2d Cir. 2016); Fed. R. Civ. P. 5(b)(2)(C);

and Sanchez v. Matta, No. 03-CV-00297 (JB) (LFG), 2005 WL 2313621, at *12 (D.N.M. July

29, 2005))  Judge Aaron also notes that "the three-day rule relating to service via mail only

extends the time the recipient has to respond; it does not affect the effective date of service."  (Id.

at 49 n.41 (citing Sanchez, 2005 WL 2313621, at *13))

 Because the sum of Plaintiff's damage awards and a reasonable award of

attorneys' fees and costs through January 3, 2018, is less than the $2 million offer of judgment,

Judge Aaron recommends that the second offer of judgment be enforced, and that Plaintiff be

denied any award of attorneys' fees and costs for expenses incurred after January 3, 2018.  (Id. at

49-50)

 In her objections, Plaintiff contends that "Fed. R. Civ. P. 68 states that the offer

must be served 14 days before trial; not as of the date of trial," and because January 3, 2018 is

excluded from the calculations pursuant to Fed. R. Civ. P. 6(a)(1)(A), "the 14-day period ended

on January 17, 2018, which was the date of trial."  The offer was thus untimely.  (Pltf. Objs.

(Dkt. No. 361) at 7 (emphasis in original))  Plaintiff further argues that the 14-day period in Rule

68 "must be read in conjunction with Rule 6[,] . . . [which] instructs that three days are added to

the time when serving by mail."  (Id.)

 In arguing that January 17, 2018, is not the last day of the 14-day period, Plaintiff

presents a new argument not made before Judge Aaron.  Plaintiff's argument that Rule 6 adds

three days to the Rule 68 time period merely rehashes an argument she made before Judge

Aaron.  Accordingly, this portion of the R&R is reviewed only for clear error.  See Phillips, 955

F. Supp. 2d at 211; Gladden, 394 F. Supp. 3d at 480.

This Court finds no error in Judge Aaron's analysis.  January 3, 2018 was, of course, "14 days before" January 17, 2018, the first day of trial.  Fed. R. Civ. P. 68(a).  Moreover, as of January 3, 2018 – when Defendant served the second offer of judgment – the "date set for trial" (id.) was January 18, 2018.  (Dec. 14, 2017 Order (Dkt. No. 148) at 1 ("The trial in the above-captioned matter shall commence on January 18, 2018. . . ."))  It was not until a January 9, 2018 conference that Judge Batts rescheduled trial from January 18, 2018 to January 17, 2018.  (Jan. 9, 2018 Tr. (Dkt. No. 163) at 36-37)  Therefore, even assuming arguendo that the Rule 68 fourteen-day period does not include the first day of trial, the offer would still be timely.

Accordingly, this Court concludes that the second offer of judgment was timely, and will enforce the second offer of judgment to the extent that the sum of Plaintiff's damage awards and reasonable attorneys' fees and costs through January 3, 2018 is less than $2 million.

### 3.    Determination of Reasonable Billing Rates, Hours, and Costs

#### a.    The Liddle Firm's Fees and Costs

Plaintiff seeks an award of attorneys' fees for work performed by eight attorneys at the Liddle Firm – Jeffrey Liddle, James Batson, Christina Palmieri, David Marek, James Halter, Jessica Savage, Dina Weinberg, and Eric Johnson – and two paralegals, Guy Sparks and Marcos Nadal.  (Liddle Firm Fees Table (Dkt. No. 353-1) at 2)

#### i.    The Liddle Firm's Reasonable Billing Rates[13]

Plaintiff seeks fees for Liddle Firm attorneys at rates ranging from $850 per hour (for partner Liddle) to $180 per hour (for junior associate Johnson).  (Liddle Firm Fees Table (Dkt. No. 353-1) at 2)

---

[13]  Judge Aaron recommends that no fees be awarded for the work performed by Liddle Firm paralegals Sparks and Nadal, because Nadal billed for serving papers that could have been delivered by FedEx, and Sparks submitted a single, vague time entry for "'Disc. Re:

The R&R recommends applying "an hourly rate of $600 for Liddle," "an hourly rate . . . of $450" for Batson and Palmieri, "an hourly rate of $325 for the hours billed by Marek and Halter," "an hourly rate of $250" for Weinberg and Savage, and "an hourly rate of $180" for Johnson.  (R&R (Dkt. No. 354) at 26-28)  These rates are lower than what Plaintiff seeks for all attorneys other than Johnson.  (Compare Liddle Firm Fees Table (Dkt. No. 353-1) at 2)  Judge Aaron arrives at these rates by analyzing attorneys' fee awards in this District for work performed during the same period as the Liddle Firm's representation of Plaintiff.  (R&R (Dkt. No. 354) at 26-28 (citing Adorno v. Port Auth. of N.Y. & N.J., 685 F. Supp. 2d 507, 513-14 (S.D.N.Y. 2010), Robinson v. City of New York, No. 05-CV-09545 (GEL), 2009 WL 3109846, at *4 (S.D.N.Y. Sept. 29, 2009), Rahman v. The Smith & Wollensky Restaurant Group, Inc., No. 06-CV-06198, 2009 WL 72441, at *5 (S.D.N.Y. Jan. 7, 2009), Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008), Heng Chan v. Sung Yue Tung Corp., No. 03-CV-06048 (GEL), 2007 WL 1373118, at *3 (S.D.N.Y. May 8, 2007), and Simmonds v. New York City Dept. of Corrections, No. 06-CV-05298, 2008 WL 4303474, at *5, 10 (S.D.N.Y. Sept. 16, 2008))

In objecting to Judge Aaron's billing rate determinations, Plaintiff's primary argument is that the reasonable rate determination should be based on current rates and not on historic rates.  (Pltf. Objs. (Dkt. No. 361) at 18-19)  Plaintiff further argues that "[t]he requested hourly rate of $735.08[14] for Jeffrey Liddle for the 45.25 hours of work performed reflects his skill and experience"; "[t]he R&R errs in recommending an hourly rate of $450" for Batson and Palmieri, because "[the requested] rates [of $590.73 and $566.37] are appropriate given their

documents.'"  (R&R (Dkt. No. 354) at 25 n.19 (citing Liddle Firm Time Records (Dkt. No. 298-2) at 5, 12)  No party has objected to this recommendation, which will be adopted by this Court.

[14]  In her motion papers and objections, Plaintiff generally uses weighted averages when discussing attorneys who billed time at multiple rates.

skill and experience"; "$575 for attorney David M. Marek's hours and $425 for James W. Halter" are reasonable rates because their work "in connection with depositions . . . is compensable" and because the R&R's "recommended rate of $325 was within the customary range in 2009"; and "[t]he R&R erred in its recommendation to reduce [Savage's and Weinberg's] rates . . . to $250" from the "modest rate[s] of $280 . . . and $260." (Id. at 19-20)

To the extent Plaintiff's objections are based on the R&R's use of historic rates, the Court rejects the objections for the reasons discussed above. Plaintiff's other objections are general, perfunctory, and repetitive of arguments she made in her moving papers. (Pltf. Br. (Dkt. No. 343) at 30-31; Liddle Decl. (Dkt. No. 344-24) ¶¶ 17-20) Accordingly, this portion of the R&R will be reviewed only for clear error. See Phillips, 955 F. Supp. 2d at 211.

As noted above, Judge Aaron's billing rate recommendations are based on attorneys' fee awards made in this District during the relevant time period, as well as his own evaluation of the reasonable rates for the Liddle Firm attorneys given their various levels of experience. This Court finds no error in Judge Aaron's approach, and no error in the billing rates that he recommends.

### ii.    The Liddle Firm's Reasonable Hours

"The hours upon which Plaintiff's motion is based are as follows: (1) 45.25 hours for Liddle; (2) 153.75 hours for Batson; (3) 699 hours for Palmieri; (4) 9 hours for Marek; (5) 10 hours for Halter; (6) 54 hours for Savage; (7) 139.75 hours for Weinberg; and (8) 22.75 hours for Johnson." (R&R (Dkt. No. 354) at 29 (citing Liddle Firm Fees Table (Dkt. No. 353-1) at 2))

Judge Aaron "finds that no adjustment need be made for the modest hours billed by Marek, Halter, and Johnson." (Id. at 29 n.21) For the other Liddle Firm attorneys, however, Judge Aaron "recommends an across-the-board reduction of 25 percent in the hours recorded." (Id. at 30) This recommendation is based on the fact that "[m]any of [the Liddle Firm]'s time

entries are vague," and that several claims brought by the Liddle Firm – including Plaintiff's defamation, negligence, and promissory estoppel claims – "were dismissed or [were] otherwise unsuccessful."  (Id. at 29)

In recommending an across-the-board reduction, Judge Aaron relies on ample authority from courts in this Circuit holding that across-the-board cuts in hours may be imposed based on the degree of success achieved and where time entries are vague.  (Id. at 29 n.22 (citing Williams v. Epic Sec. Corp., 368 F. Supp. 3d 651, 656-57 (S.D.N.Y. 2019) ("Courts in this Circuit have recognized a district court's authority to make across-the-board percentage cuts in hours, as opposed to an item-by-item approach, to arrive at the reasonable hours expended. These across-the-board cuts are based in part on the degree of success achieved by plaintiffs."); id. at 30 n.24 (citing Margel v. E.G.L. Gem Lab Ltd., No. 04-CV-01514 (PAC) (HBP), 2009 WL 302069, at *6 (S.D.N.Y. Feb. 6, 2009) ("Where time entries are justified in principle but vague in detail, courts frequently employ a reduction of 20% in order to eliminate waste that may be hidden in the entries.  Therefore, I reduce the time billed by Hanlon and Hsia to preparing for the hearing by 20%.") (citations omitted), and Aiello v. Town of Brookhaven, No. 94-CV-02622 (FB) (WDW), 2005 WL 1397202, at *3 (E.D.N.Y. June 13, 2005) ("Courts regularly apply such percentage cuts to fee awards to account for vague time entries"; finding that "a fifteen percent reduction of [one attorney]'s hours is warranted" for vagueness in time entries))  Judge Aaron also cites extensively to the Liddle Firm's time records, identifying examples of vague entries. (Id. at 29-30 & n.23 (citing entries such as "review correspondence," "call," or "research," and entries with "no description of the work performed") (quotations omitted))

In her objections, Plaintiff argues that "the work on the claims that were unsuccessful [was] de minimis and [was], in any event, part of the same set of facts that formed

the basis of the discrimination claims."  According to Plaintiff, "there is no showing that the time sheets contain so many vague entries such that they would support a 25% across the board reduction."  (Pltf. Objs. (Dkt. No. 361) at 24)

Plaintiff's objections concerning the time spent on unsuccessful claims and the number of vague time entries reiterate arguments Plaintiff made before Judge Aaron (Pltf. Reply Br. (Dkt. No. 349) at 11-14), and therefore invoke only clear error review.  See Phillips, 955 F. Supp. 2d at 211.  Given the R&R's detailed assessment of the Liddle Firm's billing records and Judge Aaron's careful consideration of Plaintiff's claims and legal strategy throughout the case, this Court finds no clear error in Judge Aaron's determinations.  Accordingly, the Court will adopt the R&R's recommendation as to the Liddle Firm's reasonable hours.[15]

### iii.      The Liddle Firm's Reasonable Costs

Plaintiff seeks to recover $60,763.09 in costs that the Liddle Firm incurred.  (Pltf. Br. (Dkt. No. 343) at 33)  Judge Aaron concludes "that an award of the entire amount of the expenses sought is appropriate," noting that Plaintiff seeks to recover "filing fee[s], postage, FedEx charges, messenger service fees, photocopies, document production expenses, court reporter fees, telephone expenses, transportation costs, meals, . . . transcript fees . . .

---

[15] Plaintiff complains that (1) Margel does not support an across-the-board reduction "to all [Liddle Firm] time entries," because the Margel court reduced hours for only a subset of entries, which were vague; and (2) Aiello "supports no reduction for unsuccessful state law claims." (Pltf. Objs. (Dkt. No. 361) at 24)

These objections are not persuasive.  While Margel applies an across-the-board reduction to only a subset of entries, see 2009 WL 302069, at *6, that point is irrelevant.  Judge Aaron cites Margel only as an example of an across-the-board reduction for vague time entries.  Plaintiff also mischaracterizes Judge Aaron's reliance on Aiello (see Pltf. Objs. (Dkt. No. 361) at 24).  Judge Aaron cites the case as support for the proposition that an across-the-board reduction is justifed when time entries are vague.  (R&R (Dkt. No. 354) at 30 n.24 ("Based upon vague time entries, courts have made cuts in fee awards"; citing Aiello))  Aiello fully supports that point.  See Aiello, 2005 WL 1397202, at *3.

computerized research . . . [l]itigation support expenses . . . [and] expert fees."  (R&R (Dkt. No.
354) at 31-32 (quotations omitted))  There is no objection to the award of the Liddle Firm's
costs.[16]  Finding no error in Judge Aaron's recommendation, this Court will adopt it.

> **b.   The Alterman Firm's and the
> Dowd Firm's Fees and Costs**

Plaintiff seeks to recover attorneys' fees for work performed by Alterman Firm
lawyers Daniel Alterman, Arlene Boop, Nicole Denver, and Lorna Peterson; Dowd Firm
Attorneys Michael Dowd and Niall Macgiollabhui; and Dowd Firm paralegal Kate Waterhouse.
(Alterman Firm Fees Table (Dkt. No. 353-3) at 2; Dowd Firm Fees Table (Dkt. No. 353-2) at 2)

> **i.    Alterman's and Dowd's Reasonable Rates**

Judge Aaron recommends granting the requested hourly rates of $600, $550, and
$350 for Alterman, Boop, and Denver, respectively; awarding an hourly rate of $300 for
Peterson – rather than the requested $350 – based in part on her having been admitted to practice
for only a year when Plaintiff retained her; awarding the requested hourly rate of $600 for Dowd;
awarding an hourly rate of $350 for Macgiollabhui rather than the requested $400 based on his
experience at the time; and awarding the requested hourly rate of $80 for Waterhouse.  (R&R
(Dkt. No. 354) at 33-34 (citing Rozell, 576 F. Supp. 2d at 546; and Harrell v. City of New York,

---

[16]  Plaintiff complains that "[t]he R&R offers no explanation for awarding these costs directly to
[the Liddle Firm] instead of Plaintiff . . . [when]Plaintiff already paid substantially all of the
costs incurred during [the Liddle Firm]'s representation."  (Pltf. Objs. (Dkt. No. 361) at 30)  The
details of the billing arrangement between Plaintiff and the Liddle Firm are not before the Court,
however, and while the Liddle Firm is not entitled to double reimbursement of its costs, it is not
clear that there is any substantial dispute between Plaintiff and the Liddle Firm as to costs.  In his
declaration, Liddle states that "Plaintiff previously paid [the Liddle Firm] $80,060.42" in
combined attorneys' fees and costs, while in her declaration, Emamian states that she "paid
$80,755.49 in attorneys' fees and costs to [the] Liddle [Firm]."  (Liddle Decl. (Dkt. No. 344-24)
¶ 26; Emamian Decl. (Dkt. No. 344-13) ¶ 36)  Presumably, the Liddle Firm's estate and Plaintiff
can resolve the $695.07 difference without further litigation.

No. 14CV7246 (VEC) (DF), 2017 WL 9538163, at *11 (S.D.N.Y. July 20, 2017) to support rate reductions))

Plaintiff objects to the reduced rates for Peterson and Macgiollabhui, complaining that Judge Aaron "improperly us[ed] . . . historical rate[s]." (Pltf. Objs. (Dkt. No. 361) at 20-21) The Court rejects this objection for the reasons discussed above. Finding no error in Judge Aaron's rate determinations, the Court will adopt his recommendation as to the Alterman Firm and Dowd Firm billing rates.

### ii.    Alterman and Dowd's Reasonable Hours

"The hours upon which Plaintiff's motion is based are as follows: (1) 382.44 hours for Alterman; (2) 31.8 hours for Boop; (3) 337.35 hours for Denver; (4) 45.44 hours for Peterson; (5) 150.59 hours for Dowd; (6) 128.65 hours for Macgiollabhui; and (7) 740.76 hours for Waterhouse." (R&R (Dkt. No. 354) at 35 (citing Alterman Firm Fees Table (Dkt. No. 353-3) at 2 and Dowd Firm Fees Table (Dkt. No. 353-2) at 2))

Judge Aaron recommends across-the-board reductions of 60 percent for the Alterman Firm's hours and 75 percent for the Dowd Firm's hours, noting that "'the case was trial-ready'" (id. at 35 (quoting Emamian I, 971 F.3d at 385)) when Alterman and Dowd were retained, and that they "withdrew from the representation of Plaintiff before trial took place." Judge Aaron finds that

> there was significant redundancy between the work already done by [Liddle Firm] attorneys and the work later done by [Alterman Firm] and Dowd Firm attorneys, and Plaintiff did not obtain any cognizable benefit from such redundancy, since the [Alterman Firm] and Dowd Firm attorneys did not participate in the trial of the case. Defendant should not be responsible for the cost of duplicative work occasioned by Plaintiff's change in law firms. Similarly, Defendant should not be responsible for any legal fees of [the Alterman Firm] and the Dowd Firm associated with the dispute with [the Liddle Firm] regarding the case files.

(Id. at 35-36 (citing Genger v. Genger, No. 14-CV-05683 (KBF) (DF), 2017 WL 9771814, at *6

(S.D.N.Y. May 22, 2017) (reducing hours claimed in fee application based upon duplication of

work by plaintiff's new law firm), report and recommendation adopted, 2017 WL 9771807

(S.D.N.Y. May 30, 2017); and Ganci v. U.S. Limousine Serv. Ltd., No. 10-CV-03027 (JFB)

(AKT), 2015 WL 1529772, at *6 (E.D.N.Y. Apr. 2, 2015) (imposing a reduction in hours where

"a significant portion of the hours expended were necessitated by the change in counsel"))

      Judge Aaron finds that "[the Alterman Firm]'s hours also should be reduced based

upon the amount of time billed for communications with their co-counsel at the Dowd Firm."

(Id. at 36 (citing Greenburger v. Roundtree, No. 17-CV-03295 (PGG) (SLC), 2020 WL 4746460,

*7 (S.D.N.Y. Aug. 16, 2020)))  And with respect to the Dowd Firm, "an even greater reduction

of its hours [than of the Alterman Firm's] hours is required," because Dowd "was not an

employment law expert, but was brought in to be a part of the trial and offer his experience in

trying cases."  Because Dowd withdrew before the trial took place, he "never performed the task

he was brought in to do."  (Id.)

      In her objections, Plaintiff argues that (1) the Alterman and Dowd Firms "were

immediately required to delve headlong into motion practice"; (2) "Plaintiff played no part in

delaying the speedy resolution of this case[,] . . . . [and] engag[ing] three sets of counsel . . .

[was] due to factors beyond her control"; (3) the Alterman and Dowd Firms spent significant

time "responding immediately to Defendant's motions in limine [and] Daubert motions and

prepar[ing] for mock jury panels"; (4) Dowd's lack of employment expertise does not support a

reduction "because most legal skills are transferrable"; and (5) "Dowd's work preparing for trial

allowed [the Beldock Firm] to staff the case leanly and not expend time and resources

conducting its own mock trial or engaging trial consultants."  (Pltf. Objs. (Dkt. No. 361) at 25-27)

Except for Plaintiff's argument that "most legal skills are transferable," all of Plaintiff's objections rehash arguments Plaintiff made to Judge Aaron.  (Pltf. Br. (Dkt. No. 343) at 10-11, 31; Pltf. Reply Br. (Dkt. No. 349) at 14-15)  And Plaintiff's argument about the transferability of legal skills misses the point.  Judge Aaron did not find that Dowd's legal services lacked value because he was not an employment lawyer.  He instead found that Dowd was brought in to try the case, and he withdrew before the trial took place, which suggests that a significant reduction in fees is warranted.  In short, this portion of the R&R will be reviewed for clear error.  See Phillips, 955 F. Supp. 2d at 211.

This Court finds no error in Judge Aaron's recommendation.  As discussed above, there is overwhelming evidence of redundancy here, and this Court agrees with Judge Aaron's analysis that Dowd made little contribution to Plaintiff's case, given that he was brought in to try the case, and withdrew before the trial took place.[17]  This Court adopts the recommendation.

### iii.   Alterman and Dowd's Reasonable Costs

The R&R recommends awarding all of the expenses incurred by the Alterman Firm and the Dowd Firm except for "a $3,600.00 payment [by the Alterman Firm] to the Dowd Firm for paralegal work, since it is duplicative of the Dowd Firm's fee request."  (R&R (Dkt. No. 354) at 39)  No party has objected to this recommendation, which will be adopted by this Court.

---

[17]  This analysis of Dowd's contribution applies as well to his Dowd Firm colleagues who supported his work on the case.

    **c.**  <u>**The Beldock Firm and Moskovitz's Fees and Costs**</u>

   Plaintiff seeks to recover fees for work performed by Beldock Firm lawyers

Jonathan Moore, David Rankin, and Luna Droubi, and by Beldock Firm paralegal Roland Wiley;

and work performed by Joshua Moskovitz, who worked at the Beldock Firm before leaving in

2016 to start his own firm.  Moskovitz worked on the case until November 2017.  (Beldock Firm

Fees Table (Dkt. No. 344-5) at 2-34; Moskovitz Decl. (Dkt. No. 344-4))

    **i.**  <u>**The Beldock Firm and Moskovitz's Reasonable Rates**</u>

   The R&R recommends hourly rates of $650 for Moore, $500 for Rankin, $400 for

Droubi, $125 for Wiley, and $400 for Moskovitz.  These are reductions from Plaintiff's

requested hourly rates for all but Wiley.  (R&R (Dkt. No. 354) at 40-41)  Judge Aaron supports

his recommendation as to these billing rates by extensive citation to the attorneys' declarations

and time sheets.  He also relies on <u>Greenburger</u>, 2020 WL 4746460, a recent decision from this

Court regarding the Beldock Firm's billing rates.  (<u>Id.</u>)

   Plaintiff objects to the reduced rates on the ground that Judge Aaron improperly

relies on historic rates.  (Pltf. Objs. (Dkt. No. 361) at 21-23)  For the reasons stated above, this

Court rejects that objection.

   Finding no error in Judge Aaron's determinations as to billing rates for the

Beldock Firm personnel and Moskovitz, this Court will adopt Judge Aaron's recommendations.

    **ii.**  <u>**The Beldock Firm and Moskovitz's Reasonable Hours**</u>

   "The hours for [Beldock Firm] timekeepers up to the time when the [s]econd

[offer of judgment] was served on January 3, 2018, upon which Plaintiff's motion is based are as

follows:  (1) 439.45 hours for Moore; (2) 147.8 hours for Rankin; (3) 197.65 hours for

Moskovitz (inclusive of 26.5 hours on [Beldock Firm] Time Records); (4) 339.65 hours for

Droubi; and (5) 29.6 hours for Wiley." (R&R (Dkt. No. 354) at 42 (citing (Beldock Firm Fees Table (Dkt. No. 344-5) at 2-34; Moskovitz Decl. (Dkt. No. 344-4))

Judge Aaron recommends an across-the-board reduction of 25 percent for the Beldock Firm's hours because (1) "[g]iven the need for the [Beldock Firm] attorneys to get up to speed on the case in order to prepare for trial, there was significant redundancy between the work already done by [the Liddle Firm], [the Alterman Firm], and Dowd Firm attorneys and the work later done by [Beldock Firm] attorneys"; and (2) "certain of the [Beldock Firm] timekeepers' hours billed during the relevant period are not compensable . . . [f]or example, the hours billed for travel time." (Id. at 42-43 (citing Tatum v. City of New York, No. 06-CV-94290 (PGG) (GWG), 2010 WL 334975, at *8 (S.D.N.Y. Jan. 28, 2010) ("[I]n this Court's experience, clients resist paying for travel time"))) As to Moskovitz, given that he "billed ramp-up time, yet did not participate in the trial," Judge Aaron recommends an across-the-board reduction of 60 percent, the same as the reduction imposed on the Alterman Firm's hours. (Id.)

In her objections, Plaintiff contends that Judge Aaron "improperly reduced [the Beldock Firm's] hours based on [their] 'degree of success,'" despite Plaintiff's win at trial. (Pltf. Objs. (Dkt. No. 361) at 27 (quoting R&R (Dkt. No. 354) at 43)) Plaintiff also argues that the Beldock Firm "performed necessary work that did not include any redundant ramp-up time," and that the "[Beldock Firm]'s streamlined discovery and trial effort was successful against a set of defendant's lawyers that took up more than two rows of the courtroom." (Id. at 28-29) As to Moskovitz, Plaintiff objects to Judge Aaron's 60 percent reduction, given that he billed only approximately 25 percent of his hours to "ramp-up time." (Id. at 29) Plaintiff does not object to Judge Aaron's finding that some of the Beldock Firm's time entries are non-compensable.

This Court agrees with Judge Aaron's approach to the Beldock Firm's hours –

significantly reducing the Beldock Firm's hours to reflect the redundancy of multiple law firms

re-plowing the same ground again and again, but not reducing the Beldock Firm's hours as much

as those of firms that exited the case before trial.  As to Moskovitz, it is reasonable to treat his

hours like those of the lawyers at the Alterman Firm.  He, like the Alterman Firm lawyers, is an

employment lawyer who joined a trial-ready case, performed redundant work, and then left the

case before it proceeded to trial.

       Plaintiff's objections are unpersuasive.  Plaintiff's degree of success argument is

non-responsive, as Judge Aaron mentions degree of success only in passing in a parenthetical.

(R&R (Dkt. No. 354) at 43)  Degree of success was not a driver for Judge Aaron's

recommendation concerning an across-the-board reduction in hours.  That the Beldock Firm

lawyers performed necessary work does not negate the fact that they also performed unnecessary

and redundant ramp-up work.  And as to Moskovitz, Plaintiff does not engage with the R&R's

reasoning that a greater reduction in his hours is appropriate because he did not participate in the

trial.

       Finding no error in Judge Aaron's recommendations concerning the Beldock

Firm's hours and Moskovitz's hours, this Court will adopt the recommendation.

### iii.    <u>The Beldock Firm's Reasonable Costs</u>[18]

       The R&R recommends that Plaintiff recover $5,512.74 in expenses the Beldock

Firm incurred for transportation, messenger/delivery charges, photocopies, computer research

charges, process server fees, telephone conference charges, and document reproduction charges.

---

[18]  There is no separate submission regarding costs incurred by Moskovitz.

(R&R (Dkt. No. 354) at 43-44)  No party has objected to this recommendation, which this Court adopts.

### d.      The R&R's Recommendation as to Plaintiff's Costs

Plaintiff "request[s] direct reimbursement of $463,686.17 of [her] out-of-pocket expenses, which includes $316,269.68 in fees and costs paid directly to vendors, $26,661 of the payments made to Dowd and Alterman, $80,55.49 in fees and costs paid directly to Liddle & Robinson, and $40,000 for the trial success fees for DOAR services[, the mock trial consultant firm]."  (Emamian Decl. (Dkt. No. 343-13) ¶ 11)

As to costs that Plaintiff incurred directly, Judge Aaron recommends that she be compensated only in connection with (1) a December 16, 2017 payment to her expert, Dr. Robert Goldstein; and (2) payments on July 2 and December 21, 2010 to Tinari Economic Group.  Judge Aaron finds that these expenses are Plaintiff's only pre-January 3, 2018 expenses that are sufficiently documented, necessary for her legal case, and reasonable.  The R&R recommends that Plaintiff's request for costs in connection with payments to additional consultants and experts, payments to lawyers who did not appear as counsel of record, and payments for "personal meals, job search-related and other travel, or tuition" be denied.  (R&R (Dkt. No. 354) at 44-46)

As to Plaintiff's request for costs in connection with DOAR's mock trial services, the R&R recommends that the Court cap the total award at $40,000 – i.e., half the total of $80,000 sought across the various requests in Plaintiff's moving papers.  Because Judge Aaron already recommends granting $40,000 in connection with the DOAR costs detailed in Alterman's declaration (Dkt. No. 344-8 ¶ 38) – a recommendation that this Court has adopted – he does not recommend an additional award of mock trial expenses in connection with Emamian's arguments about her own out-of-pocket expenses.  (R&R (Dkt. No. 354) at 44 n.35)

Judge Aaron's "find[s] that a second mock trial session" – which accounts for half of the total $80,000 in expenses – "was not 'necessary for the representation of the client.'"  (Id. at 38-39 & n.29, 44 n.35 (quoting AW Indus., Inc. v. Sleep Well Mattress, Inc., No. 07-CV-3969 SLT JMA, 2009 WL 485186, at *6 (E.D.N.Y. Feb. 26, 2009)))  Judge Aaron also makes clear that the $40,000 in mock trial expenses he recommends be awarded includes the $20,000 "success fee" that Emamian owes DOAR.  (Id. at 38-39 (citing Emamian Decl. (Dkt. No. 344-13) ¶ 24))

"Plaintiff objects to the R&R's failure to award her costs for all experts."  (Pltf. Objs. (Dkt. No. 361) at 29)  She states that "Comprehensive Rehab performed a neuropsychological evaluation of Plaintiff and reported findings to Dr. Robert Goldstein, who testified at trial about Plaintiff's emotional distress damages"; and that "Plaintiff consulted with Friedman LLP/Eco-Stat, who prepared an economic loss evaluation and report."  (Id. at 29-30)  "Plaintiff objects to the R&R awarding only $40,000 of the $60,000 in DOAR mock trial costs."[19]  (Id. at 30)

Plaintiff does not object to the R&R's recommendation that Plaintiff be denied costs relating to lawyers who did not appear on her behalf, or for Plaintiff's personal expenses. Accordingly, those recommendations will be reviewed only for clear error.  Gilmore, 2011 WL 611826, at *1.

As to Comprehensive Rehab, while Plaintiff states that this organization "reported [neuropsychological findings regarding Emamian] to Dr. Goldstein, who testified at trial" (Pltf. Objs. (Dkt. No. 361) at 29-30), Dr. Goldstein himself "performed a comprehensive psychiatric examination of [P]laintiff."  (Emamian Decl. (Dkt. No. 344-13) ¶ 26)  Plaintiff does not explain

---

[19]  Plaintiff's reference to $60,000 appears to reflect a deduction for DOAR costs that the Dowd Firm paid.  (Emamian Decl. (Dkt. No. 344-13) ¶ 24)

how Comprehensive Rehab added to or improved on the examination her testifying expert performed.  As to Friedman LLP/Eco-Stat, there is no indication that this firm's report was ever introduced at trial.  In any event, the only economic damages the jury awarded were back pay. And as to the DOAR mock trials, there is no explanation in the record as to why two mock trials were necessary; Plaintiff merely asserts that "two jury panels . . . [were] reasonable and compensable."[20]  (Pltf. Reply Br. (Dkt. No. 349) at 14)

    For these reasons, Plaintiff's objections are unpersuasive.  This Court finds no error in Judge Aaron's recommendations concerning costs related to consultants, experts, DOAR, lawyers who never appeared on behalf of Plaintiff, or Plaintiff's personal expenses. Accordingly, this Court adopts the R&R's recommendation as to the costs Plaintiff incurred directly.

---

[20]  Plaintiff cites Ravina v. Columbia Univ., No. 16-CV-2137 (RA), 2020 WL 1080780, at *15 (S.D.N.Y. Mar. 6, 2020), as a case in which a plaintiff was awarded $100,000 for DOAR costs. (Pltf. Objs. (Dkt. No. 361) at 30)  In that case, however, plaintiff sought $355,984.71 in reimbursement for DOAR expenses.  Id. at *14.

\*     \*     \*     \*

The tables shown below set out Emamian's reasonable attorneys' fees and costs through January 3, 2018, as well as her damage awards, including post-verdict, pre-judgment interest:

| Reasonable Attorneys' Fees Through January 3, 2018 | | | | | | |
|---|---|---|---|---|---|---|
| Firm | Timekeeper | Hourly rate awarded | Hours sought through January 3, 2018 | Reduction in hours | Hours awarded | Fees awarded |
| Liddle | Liddle | $600 | 45.25 | 25% | 34 | $20,400.00 |
| | Batson | $450 | 153.75 | 25% | 115 | $51,750.00 |
| | Palmieri | $450 | 699 | 25% | 524 | $235,800.00 |
| | Marek | $325 | 9 | 0% | 9 | $2,925.00 |
| | Halter | $325 | 10 | 0% | 10 | $3,250.00 |
| | Savage | $250 | 54 | 25% | 41 | $10,250.00 |
| | Weinberg | $250 | 139.75 | 25% | 105 | $26,250.00 |
| | Johnson | $180 | 22.75 | 0% | 22.75 | $4,095.00 |
| | Sparks | $0 | 1.25 | 100% | 0 | $0.00 |
| | Nadal | $0 | 1 | 100% | 0 | $0.00 |
| | | | | | Liddle Firm Total: | $354,720.00 |
| Alterman | Alterman | $600 | 382.44 | 60% | 153 | $91,800.00 |
| | Boop | $550 | 31.8 | 60% | 13 | $7,150.00 |
| | Denver | $350 | 337.35 | 60% | 135 | $47,250.00 |
| | Peterson | $250 | 45.44 | 60% | 18 | $4,500.00 |
| | | | | | Alterman Firm Total: | $150,700.00 |
| Dowd | Dowd | $600 | 150.59 | 75% | 38 | $22,800.00 |
| | Macgiollabhui | $350 | 128.65 | 75% | 32 | $11,200.00 |
| | Waterhouse | $80 | 740.76 | 75% | 185 | $14,800.00 |
| | | | | | Dowd Firm Total: | $48,800.00 |
| Beldock | Moore | $650 | 439.45 | 25% | 330 | $214,500.00 |
| | Rankin | $500 | 147.8 | 25% | 111 | $55,500.00 |
| | Droubi | $400 | 339.65 | 25% | 255 | $102,000.00 |
| | Wiley | $125 | 29.6 | 25% | 22 | $2,750.00 |
| | | | | | Beldock Firm Total: | $374,750.00 |
| Beldock/ Solo | Moskovitz | $400 | 197.65 | 60% | 79 | $31,600.00 |
| | | | | | GRAND TOTAL: | $960,570.00 |

| Reasonable Costs Through January 3, 2018 | |
|---|---|
| **Firm/Person** | **Costs awarded through January 3, 2018** |
| Liddle Firm | $60,763.09 |
| Alterman Firm | $26,093.20 |
| Dowd Firm | $23,876.63 |
| Beldock Firm | $5,512.74 |
| Plaintiff | $18,610.00 |
| **Total Costs:** | **$134,855.66** |

| Damage Awards | |
|---|---|
| **Type of damages** | **Amount** |
| Backpay | $250,000.00 |
| Pain and suffering | $200,000.00 |
| Post-verdict, prejudgment interest on backpay | $17,691.77 |
| Post-verdict, pre-judgment interest on pain and suffering | $14,202.74 |
| **Total damage awards:** | **$481,894.51** |

| Totals | |
|---|---|
| **Category** | **Total** |
| Attorneys' fees | $960,570.00 |
| Costs | $134,855.66 |
| Damages | $481,894.51 |
| **Overall total:** | **$1,577,320.17** |

C.     **Effect of Second Offer of Judgment**

As set forth above, the sum of the damages, and the award of attorneys' fees and costs through January 3, 2018, is $1,577,320.17, which is lower than the unaccepted second offer of judgment served on January 3, 2018.  Accordingly, Plaintiff may not recoup attorneys' fees or costs incurred after January 3, 2018.  See Fed. R. Civ. P. 68(d).

D.     **The R&R's Recommendation as to Post-Judgment Interest**

The R&R recommends that "Plaintiff . . . be awarded post-judgment interest pursuant to 28 U.S.C. § 1961(a), on the total amount of the judgment, i.e., $467,691.77 ($250,000.00 in backpay, $200,000.00 in emotional distress damages, and $17,691.77 in post-verdict, pre-judgment interest)."  (R&R (Dkt. No. 354) at 21, 51)  In context, it is clear that the R&R recommends that such interest run from the date of the judgment, December 12, 2018. (See id. at 50; Dkt. No. 280)  No party has objected to an award of post-judgment interest on these sums, and given the plain language of Section 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."), this Court finds no error in Judge Aaron's recommendation.  Given this Court's finding that Plaintiff is entitled to post-verdict, pre-judgment interest on her $200,000 emotional distress damages award – a sum amounting to $14,202.74 – this amount will be added to the sum on which post-judgment interest accrues, bringing the total principal to $481,894.51.

The R&R recommends that Plaintiff be granted "post-judgment interest on the [attorneys'] fee and cost award," but that such interest "should not begin to run until an amended judgment is entered that includes the fee and cost award."  (R&R (Dkt. No. 354) at 51 n.43)  In her objections, Plaintiff argues that post-judgment interest on any award of attorneys' fees and costs should accrue from the date of the original judgment – December 12, 2018.  (Pltf. Objs. (Dkt. No. 361) at 17-18)  This Court rejects that objection for the same reasons discussed above

in connection with Plaintiff's claim that she is entitled to post-verdict, pre-judgment interest on any award of attorneys' fees and costs.[21]   Accordingly, this Court adopts Judge Aaron's recommendation.

## CONCLUSION

For the reasons stated above, the R&R is adopted in part, and Plaintiff's motion for pre- and post-judgment interest, and an award of attorneys' fees and costs, is granted in part.

Plaintiff's final damages award is $481,894.51, consisting of $250,000.00 in back pay, $200,000.00 in emotional distress damages, $17,691.77 in post-verdict, pre-judgment interest on back pay (calculated at the rate of 9 percent per annum from February 28, 2018 to December 12, 2018), and $14,202.74 in post-verdict, pre-judgment interest on emotional distress damages (also calculated at the rate of 9 percent per annum from February 28, 2018 to December 12, 2018).

Plaintiff is awarded post-judgment interest on the $481,894.51 damages award until the date of payment of such damages, to be calculated from the date of the initial judgment in this case (i.e., December 12, 2018), at a rate equal to the weekly average 1-year constant

---

[21] Plaintiff cites Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp., 599 F. Supp. 509, 523 (S.D.N.Y. 1984) and Mugavero v. Arms Acres, Inc., No. 03 CIV.05724 PGG, 2010 WL 451045, at *13 (S.D.N.Y. Feb. 9, 2010) in support of her objection.  Neither case supports Plaintiff's argument.  In Williamsburg Fair Housing Commission, the court ordered post-judgment interest as of the date it "entered an order . . . granting plaintiffs' request for attorneys' fees and costs."  599 F. Supp. at 522-23.  And in Mugavero, "the entire amended damages award" on which this Court ordered post-judgment interest to run, 2010 WL 451045, at *13, did not include attorneys' fees or costs.

maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System,
for the calendar week preceding the date of the judgment (i.e., December 12, 2018).

Plaintiff is awarded attorneys' fees in the amount of $960,570.00 (i.e.,
$354,720.00 attributable to the Liddle Firm, $150,700.00 attributable to the Alterman Firm,
$48,800.00 attributable to the Dowd Firm, $374,750.00 attributable to the Beldock Firm, and
$31,600.00 attributable to Moskovitz) and costs in the amount of $134,855.66 (i.e., $60,763.09
attributable to the Liddle Firm, $49,969.83 attributable to the Alterman Firm and the Dowd Firm,
$5,512.74 attributable to the Beldock Firm, and $18,610.00 attributable to Plaintiff herself).

Plaintiff is awarded post-judgment interest on the award of attorneys' fees and
costs until the date of payment of such fees and costs, to be calculated from April 26, 2023 (the
date of this Court's prior Memorandum Opinion and Order (Dkt. No. 366)), at a rate equal to the
weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors
of the Federal Reserve System, for the calendar week preceding April 26, 2023.

Dated: New York, New York
     July 11, 2023

                      SO ORDERED.

                      _____
                      Paul G. Gardephe
                      United States District Judge